**William S. KILROY, Jr., Appellant,**

v.

**Lora Jean KILROY and Lynn Alice Ryan Kilroy, Appellee.**

**In re William S. Kilroy, Jr., Relator.**

**Nos. 01–03–01236–CV, 01–03–01197–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

May 6, 2004.

Earle S. Lilly, Piro & Lilly, L.L.P., Houston, and Richard R. Orsinger, McCurley, Orsinger, McCurley & Nelson, L.L.P., San Antonio, for Appellant.

James C. Henry, Joan Foote Jenkins, Short & Jenkins, PLC, Houston, for Appellee.

Panel consists of Justices TAFT, HANKS, and HIGLEY.

## OPINION

LAURA CARTER HIGLEY, Justice.

By interlocutory appeal and mandamus, William S. Kilroy, Jr. ("Billy"), challenges the trial court's order staying arbitration proceedings between him and his ex-wife, Lynn Alice Ryan Kilroy ("Lynn"), pending the court's determination of standing issues relating to Billy's mother, Lora Jean Kilroy ("Jeanie"). We determine (1) whether we have jurisdiction over the mandamus proceeding or the interlocutory appeal and (2) whether the trial court abused its discretion in staying the arbitration proceedings.

We dismiss the interlocutory appeal for want of jurisdiction and conditionally grant the petition for writ of mandamus.

### Facts & Procedural History

Billy and Lynn were married on September 25, 1999. Shortly thereafter, Lynn gave birth to a girl, L.C.K. On February 18, 2003, the couple divorced.

Billy and Lynn's final decree of divorce incorporated a mediated settlement agreement, appointing Billy as L.C.K.'s sole managing conservator and providing him the right to establish the primary residence of L.C.K. within Harris County, Texas or contiguous counties. Lynn was appointed the child's possessory conservator and given visitation rights. The divorce decree further incorporated a rule 11 agreement, as follows:

> BILLY KILROY and LYNN KILROY have signed and agreed to the terms and conditions set forth in the Rule 11 Agreement attached hereto as **Appendix 1,** which is incorporated into this Final Decree of Divorce as though set out herein verbatim and made a part hereof for all purposes.

The rule 11 agreement provided that the parties would submit subsequent controversies concerning L.C.K. to binding arbitration. The agreement also provided that Bill Henderson, the mediator who facilitated the parties' settlement agreement, would serve as arbitrator.

In September, 2003, Billy initiated arbitration proceedings, seeking (1) to terminate Lynn's visitation rights, pending the completion of a psychiatric assessment and (2) to enforce or otherwise obtain the right to establish L.C.K.'s residence outside of Texas. After the initial arbitration proceedings, the arbitrator determined that the divorce decree prohibited Billy from relocating L.C.K. outside of Harris County or those counties contiguous to Harris County. Therefore, on October 22, 2003, the arbitrator ordered that L.C.K. was not to be removed from Harris County or contiguous counties for the purpose of changing the child's primary residence, pending

the completion of arbitration proceedings. The arbitrator further ordered that arbitration would reconvene on October 30, 2003, to address the issues of whether the residency restriction should be lifted and whether Lynn's visitation rights should be terminated.

Before arbitration recommenced, however, Jeanie filed a suit affecting the parent-child relationship (SAPCR) in the trial court, seeking custody of L.C.K. or, in the alternative, a court order limiting Billy's right to determine the primary residence of the child within Houston, Harris County, Texas. Jeanie also filed an "Opposed Motion to Order Abatement of Arbitration Proceedings," asking the trial court to abate the ongoing arbitration proceedings between Billy and Lynn and resume jurisdiction of the matters involved therein.

On November 4, 2003, the trial court heard argument on Jeanie's motion to abate the arbitration proceedings. During the hearing, the trial court determined that Jeanie's standing to bring her SAPCR action was in question. Therefore, the court stayed the arbitration proceedings and postponed consideration of Jeanie's claims, pending the court's determination as to Jeanie's standing. More specifically, the trial court held as follows:

> The Court, from argument of counsel, finds that there is going to be a serious challenge to standing in this case. The Court is not going to rule on whether or not the case will be referred to arbitration or not and will stay any further proceedings until the parties have amended, if they are going to. And the Court will give a reasonable amount of time to amend challenging standing.
>
> The Court wants to determine the issue of standing to see how many parties there are in this case before it's going to rule any further on the arbitration.
>
> . . . .

So I don't want any more arbitration going on until the Court determines who the parties are to this case.

### Jurisdiction

As an initial concern, we must address the issue of our jurisdiction over this matter before we can reach the merits of the parties' arguments. *See Davis v. Covert,* 983 S.W.2d 301, 302 (Tex.App.-Houston [1st Dist.] 1998, pet. dism'd w.o.j.). Appellate courts must determine, even *sua sponte,* the question of jurisdiction, and the lack of jurisdiction may not be ignored simply because the parties do not raise the issue. *See McCauley v. Consol. Underwriters,* 157 Tex. 475, 304 S.W.2d 265, 266 (1957); *Davis,* 983 S.W.2d at 302. When an appellate court concludes it does not have jurisdiction, it can only dismiss the appeal. *Bethurum v. Holland,* 771 S.W.2d 719, 722 (Tex.App.-Amarillo 1989, no writ).

### A. The Appeal

The legislature determines, by statute, whether a particular type of pretrial ruling may be appealed before a final judgment is rendered. Appellate courts have jurisdiction to consider immediate appeals of interlocutory orders only if a statute explicitly provides appellate jurisdiction. *Stary v. DeBord,* 967 S.W.2d 352, 352-53 (Tex.1998); *Eichelberger v. Hayton,* 814 S.W.2d 179, 182 (Tex.App.-Houston [1st Dist.] 1991, writ denied). A statute authorizing an appeal from an interlocutory order is in derogation of the general rule that only final judgments are appealable; therefore, Texas courts strictly construe those statutes authorizing interlocutory appeals. *Walker Sand, Inc. v. Baytown Asphalt Materials, Ltd.,* 95 S.W.3d 511, 514 (Tex.App.-Houston [1st Dist.] 2002, no pet.).

In Texas, the legislature has authorized an interlocutory appeal of an order grant-

ing an application to stay arbitration made under Civil Practice and Remedies Code section 171.023. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.098 (Vernon Supp. 2004). Section 171.023 provides, in pertinent part, as follows:

> (a) A court may stay an arbitration commenced or threatened on application and a showing that there is not an agreement to arbitrate.

TEX. CIV. PRAC. & REM.CODE ANN. § 171.023(a) (Vernon Supp.2004).

In the instant case, the trial court acknowledged on the record that there was a binding arbitration agreement governing the dispute between Billy and Lynn. Thus, the order staying arbitration proceedings was not rendered pursuant to section 171.023. Strictly construing section 171.098—as we must—we conclude that the court's order staying arbitration, pending the resolution of Jeanie's standing, was not an appealable, interlocutory order.

We hold that this Court lacks jurisdiction to consider Billy's appeal.

### B. The Petition for Writ of Mandamus

Although we have no jurisdiction to hear Billy's appeal, we may nonetheless consider his petition for writ of mandamus.

 Mandamus is an extraordinary remedy and is available only in limited circumstances of manifest and urgent necessity. *See Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989) (orig.proceeding). Thus, a writ of mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law. *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985). A trial court abuses its discretion only when its decision is so arbitrary

and unreasonable that the decision amounts to a clear and prejudicial error of law. *Cent. Nat'l Ins. Co. Of Omaha v. Lerner,* 856 S.W.2d 492, 494 (Tex.App.-Houston [1st Dist.] 1993, orig. proceeding). Interference through the issuance of a writ of mandamus is justified "when parties stand to lose their substantial rights." *Walker v. Packer,* 827 S.W.2d 833, 842 (Tex.1992) (orig.proceeding) (quoting *Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (1958)(orig.proceeding)).

We have held above that the trial court's order staying arbitration was not an appealable, interlocutory order. Furthermore, because the trial court's order requires the parties to litigate the issue of Jeanie's standing before presumably resuming arbitration, Billy and Lynn will have been "deprived of the benefits of the arbitration clause ..., and the purpose of providing a rapid, inexpensive alternative to traditional litigation would be defeated." *See In re MHI P'ship, Ltd.,* 7 S.W.3d 918, 921 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding) (citing *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272–73 (Tex. 1992)). Thus, provided the trial court committed a clear abuse of discretion in rendering the order, mandamus will lie. *See id.*

### Applicable Law

Before addressing the substantive issues raised by Billy's petition for mandamus, we must determine the law applicable to the instant controversy. The parties agree that the rule 11 agreement provides for Texas arbitration law to apply to Billy and Lynn's arbitration proceedings. However, Billy contends that the Texas General Arbitration Act ("TGAA") applies to the instant controversy, while Jeanie contends that Family Code section 153.0071[1] gov-

---

1. Family Code, section 153.0071 provides, in pertinent part, as follows:

(a) On written agreement of the parties, the court may refer a suit affecting the parent-child relationship to arbitration.

erns. The existing dispute concerning the law governing the agreement requires us to interpret the agreement to determine the intent of the parties.

 Whether an arbitration agreement imposes a duty to arbitrate the claims in a particular dispute and the law by which the parties agreed to be governed pursuant to the agreement is a matter of contract interpretation. *Jabri v. Qaddura*, 108 S.W.3d 404, 410 (Tex.App.-Fort Worth 2003, no pet.) (pertaining to scope of agreement); *Henry v. Gonzalez*, 18 S.W.3d 684, 688 (Tex.App.-San Antonio 2000, pet. dism'd by agr.) (pertaining to questions of governing law). If there is no ambiguity in the contract, the construction of the written instrument is a question of law for the court. *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968). Whether a contract is ambiguous is a question of law as well. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Thus, if the contract is worded such that it may be given a certain or definite legal interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Nat'l Union Fire Ins. Co. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex.1995).

 Our primary goal in construing a written contract is to ascertain and give effect to the intent of the parties as expressed in the instrument. *Jabri*, 108 S.W.3d at 411. In construing the arbitration agreement, we are to examine all parts of the document and the circumstances surrounding the formulation of the contract. *Id.* We must consider all of the provisions with reference to the entire ar-

bitration agreement; no single provision will be controlling. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). During our analysis, we remain cognizant that there is a strong presumption in Texas public policy favoring arbitration. *Houston Lighting & Power Co. v. City of San Antonio*, 896 S.W.2d 366, 371–72 (Tex.App.-Houston [1st Dist.] 1995, writ dism'd w.o.j.).

In the instant case, the pertinent provisions of the rule 11 agreement provide as follows:

1. The parties stipulate and agree that they are desirous of resolving all legally permissible post civil divorce and children issues by binding arbitration, as opposed to court litigation, specifically parent/child relationship issues that BILLY and LYNN could litigate, absent this agreement.

2. Upon execution of this Rule 11 Agreement by BILLY and his respective attorneys, LYNN, Pro Se, the attorney ad litem and the arbitrator desired by BILLY and LYNN, Bill Henderson, BILLY and LYNN covenant, agree, and stipulate that each of them waive the right to revoke any agreements made in this document, and accept all agreements contained in this document as being irrevocable as of the date and time of execution. The parties acknowledge that Henderson is to serve pursuant to the Texas Civil Practice and Remedies Code, Section 154.052 and sections 6.601 and 153.0071 of the Texas Family Code.

The agreement must state whether the arbitration is binding or non-binding.

(b) If the parties agree to binding arbitration, the court shall render an order reflecting the arbitrator's award unless the court determines at a non-jury hearing that the award is not in the best interest of the child. The burden of proof at a hearing under this subsection is on the party seeking to avoid rendition of an order based on the arbitrator's award.

TEX. FAM.CODE ANN. § 153.0071 (Vernon 2002).

Billy contends that the agreement should be construed broadly, making the TGAA governing. On the other hand, Jeanie asserts that paragraph two of the contract limits the applicable law to Family Code section 153.0071.

After considering all the provisions with reference to the entire arbitration agreement, we conclude that the first paragraph of the rule 11 agreement expresses the intent of the parties in regard to the scope of the agreement. This paragraph calls for binding arbitration of all legally permissible post-civil divorce and children issues. Thus, the arbitration agreement is (1) a written agreement (2) to resolve all legally permissible future controversies (3) by binding arbitration. This is the sort of arbitration agreement which falls under the TGAA. *See In re Cartwright*, 104 S.W.3d 706, 712 (Tex.App.-Houston [1st Dist.] 2003, orig. proceeding).

There is no indication that the parties intended for the second paragraph to limit the law applicable to the arbitration agreement. Instead, the second paragraph simply establishes (1) that Mr. Henderson is to act as arbitrator and (2) the authority of Mr. Henderson (a) to generally act as an arbitrator for the parties (Civil Practice and Remedies Code, section 154.052), (b) to arbitrate the parties' divorce matters (Family Code, section 6.601), and (c) to arbitrate the parties' SAPCR matters (Family Code, section 153.0071).

Furthermore, the fact that the agreement pertains to SAPCR controversies does not otherwise make the TGAA inapplicable. *See* Tex. Civ. Prac. & Rem.Code Ann. § 171.002 (Vernon Supp.2004). Civil Practice and Remedies Code, section 171.002 lists those matters excepted from the TGAA; SAPCR matters are conspicuously missing from the list. *See id.* Therefore, we determine that the legislature meant for arbitration agreements in SAPCR controversies to be governable by the TGAA. *See Cartwright*, 104 S.W.3d at 712.

However, that the TGAA governs the arbitration agreement at issue does not necessarily mean the Family Code's provisions providing for arbitration of SAPCR matters do not also govern the agreement. *See Stieren v. McBroom*, 103 S.W.3d 602, 605 (Tex.App.-San Antonio 2003, pet. denied). There is no existing authority indicating that the TGAA and family code arbitration provisions are meant to be mutually exclusive. Indeed, in matters such as the one at bar, it is helpful to consider both provisions in concert, recognizing that, where the two authorities conflict, the specificity of the family code provisions require us to apply them over the more general TGAA provisions. *See* Tex. Gov't Code Ann. § 311.026 (Vernon 1998).

Thus, we conclude that both the TGAA and Family Code section 153.0071 govern the arbitration agreement at issue.

### Stay of Arbitration Proceedings

Billy asserts that mandamus is appropriate because the trial court's stay of the arbitration proceedings between him and Lynn was a clear abuse of discretion, as Jeanie's standing was an issue to be determined by the arbitrator. Conversely, Jeanie argues that Family Code subsection 153.0071(a) provided the trial court with the discretion to either hear the issue of Jeanie's standing or submit it to the arbitrator. Jeanie further argues that subsection 153.0071(a) also provided the court with the discretion to hear Billy and Lynn's underlying controversies; therefore, they should have petitioned the trial court before proceeding to arbitration in order to enable the court to determine whether the controversy was appropriate for arbitration. Thus, Jeanie concludes, the trial court did not err in staying the

arbitration proceedings so that it could determine Jeanie's standing.

■ Arbitration is a creature of contract; thus, when a party seeks to compel arbitration, he must first establish his right to that remedy under contract. *Pepe Int'l Dev. Co. v. Pub Brewing Co.,* 915 S.W.2d 925, 931 (Tex.App.-Houston [1st Dist.] 1996, no writ). Because only Billy and Lynn were parties to the rule 11 agreement, Jeanie was not bound by the arbitration clause therein and could bring her SAPCR suit in the trial court. *See id.* (citing *Prudential-Bache Sec., Inc. v. Garza,* 848 S.W.2d 803, 806–07 (Tex.App.-Corpus Christi 1993, orig. proceeding)). Similarly, Jeanie had no right to intervene in the arbitration proceedings between Billy and Lynn, as she was not a party to the rule 11 agreement. *See id.* Therefore, the trial court was not required to submit either the issue of Jeanie's standing or Jeanie's SAPCR action, itself, to the arbitrator. Indeed, the trial court lacked the discretion to submit any of the issues raised by Jeanie to binding arbitration, absent agreement of all the parties involved. *See id.*

We disagree with Billy's contention that the trial court was required to submit the issue of Jeanie's standing to arbitration because her claims required reliance on the terms of the divorce decree. Billy predicates his argument on a line of cases holding that a nonparty to an arbitration agreement can be bound to arbitrate when the nature of the claim requires her to rely on the terms of the written agreement containing the arbitration provision. *See ANCO Ins. Servs. of Houston, Inc. v. Romero,* 27 S.W.3d 1, 4 (Tex.App.-San Antonio 2000, pet denied); *Valero Energy Corp. v. Teco Pipeline Co.,* 2 S.W.3d 576, 591–93 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *Carlin v. 3V Inc.,* 928 S.W.2d 291, 296–97 (Tex.App.-Houston [14th Dist.] 1996, no writ); *Merrill Lynch,*

*Pierce, Fenner & Smith v. Eddings,* 838 S.W.2d 874, 878–79 (Tex.App.-Waco 1992, writ denied). However, in the instant case, the party resisting arbitration was not relying on the terms of the written agreement containing the arbitration provision in asserting her claims. Jeanie based her claims on Family Code sections 153.432, 102.003(9) and 102.004. If Jeanie proved that she was entitled to relief under any one of these authorities, she was entitled to such relief, regardless of the divorce decree or rule 11 agreement. Thus, Jeanie's trial court proceedings were separate and distinct from Billy and Lynn's arbitration proceedings.

Because Jeanie was properly before the trial court attempting to litigate the identical issues that Billy and Lynn were arbitrating, however, does not necessarily mean that the trial court had the discretion to stay the arbitration proceedings, pending resolution of some or all of the issues before the court.

■ On application of a party that shows a valid agreement to arbitrate, the trial court must allow the parties to the arbitration agreement to proceed with arbitration. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 171.001 (Vernon Supp.2004); *Pub Brewing Co.,* 915 S.W.2d at 929. Once a trial court determines that a valid agreement to arbitrate exists and that the claim raised falls within the scope of that agreement, it has no discretion but to submit the claims to arbitration. *Pub Brewing Co.,* 915 S.W.2d at 929. Furthermore, the presence in litigation of parties not privy to an arbitration agreement does not defeat the right of a party to such agreement to have its claims arbitrated. *See id.* at 931; *Vireo, P.L.L.C. v. Cates,* 953 S.W.2d 489, 501 (Tex.App.-Austin 1997, pet. denied) (Jones, J., dissenting). Thus, we conclude that the trial court lacked the discretion to stay Billy and Lynn's arbitra-

tion proceedings, pending resolution of the issue of Jeanie's standing.

Although there is a dearth of authority addressing this specific issue under the TGAA, our conclusion follows similar decisions under the Federal Arbitration Act (FAA).[2] For instance, in *Moses H. Cone Memorial Hospital v. Mercury Construction*, the United States Supreme Court opined:

> Under the [FAA] an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.
>
> . . . .
>
> In some cases, of course, it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court (or to the state trial court under applicable state procedural rules) as a matter of its discretion to control its docket.

*Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 & n. 23, 103 S.Ct. 927, 939 & n. 23, 74 L.Ed.2d 765 (1983).

Similarly, in *Tai Ping Ins. Co. v. M/V Warschau*, the Fifth Circuit Court of Appeals held that the trial court lacked discretion to stay arbitration of indemnity and contribution issues between joint tortfeasors, pending a determination of liability by the trial court hearing the underlying claim. *Tai Ping Ins. Co. v. M/V Warschau*, 731 F.2d 1141, 1145 (5th Cir. 1984). In doing so, the court stated,

> While [appellee] asserts that permitting the claim for indemnity to go forward in arbitration will produce 'duplication of effort, redundant testimony, and the possibility of inconsistent findings,' we

think that these are the risks that parties to an arbitration clause must be considered to have contemplated at the time they struck their bargain.

*Tai Ping*, 731 F.2d at 1145.

We find these cases persuasive.

Furthermore, we disagree with Jeanie's contention that, because this case involves a SAPCR action, the trial court necessarily had the discretion to stay the arbitration proceedings between Billy and Lynn. Although we recognize both the unique nature of SAPCR actions and the importance of ensuring that a court of continuing, exclusive jurisdiction has ultimate discretion as to whether any action taken in regard to a child is in the best interest of that child, it does not follow, *a priori*, that a trial court may disregard an agreement to arbitrate by forcing parties to litigate their SAPCR controversies. Nor does it follow, in the instant case, that the trial court may interfere with arbitration proceedings in an effort to provide itself time to unravel issues peculiar to litigation brought by a nonparty to the arbitration agreement.

We further disagree with Jeanie's contention that, in SAPCR cases, parties to an arbitration agreement must petition the trial court and seek a referral before proceeding to arbitration. Jeanie's contention is predicated on language in Family Code subsection 153.0071(a) stating that "on written agreement of the parties, *the court may refer a suit affecting the parent-child relationship to arbitration.*" TEX. FAM. CODE ANN. § 153.0071(a) (emphasis added). Jeanie argues that, by using the word "may" instead of the word "shall," the legislature expressed its intent that arbitrable controversies first pass through the trial court before proceeding to arbitration.

---

2. Because our state policy favoring arbitration mirrors the federal policy favoring arbitration, federal cases interpreting the FAA are persuasive in interpreting arbitration clauses governed by the TGAA. *Vireo*, 953 S.W.2d at 501, n. 4 (Jones, J., dissenting).

Although this Court has not previously endeavored to interpret the language cited by Jeanie, at least one appellate court has interpreted the identical language—as used in Family Code subsection 153.0071(c) [3]—not to require parties to seek judicial permission before proceeding with mediation in SAPCR cases. *See In re J.A.W.-N.*, 94 S.W.3d 119, 121 (Tex.App.-Corpus Christi 2002, orig. proceeding). In *J.A.W.-N.*, the court reasoned as follows:

> Nothing in section 153.0071(c) requires, nor should be construed to require, a written request or a written order of referral based on the request of the parties or the court's own motion as a prerequisite to parties agreeing to mediate their differences and reducing that agreement to writing. Such a requirement would have a chilling effect on the mediation process. Moreover, appellant has directed us to no authority and we find none, that precludes parties from agreeing to mediate without involving the court in making that decision.

*Id.* We find this rationale both persuasive and applicable to subsection 153.0071(a)'s language regarding arbitration proceedings.

In the instant case, the rule 11 agreement did not require the parties to first petition the trial court before initiating arbitration proceedings. Absent such a contractual agreement, neither the TGAA nor Family Code subsection 153.0071(a) required Billy and Lynn to make such a petition. *See J.A.W.-N.*, 94 S.W.3d at 121; *see also*, TEX. CIV. PRAC. & REM.CODE ANN. §§ 171.001–171.098 (Vernon 1997 & Supp. 2004). Thus, Billy and Lynn were not required to first petition the trial court or seek a referral by the court before initiating arbitration proceedings under the rule 11 agreement.

We are cognizant of Jeanie's concern that our decision today will allow parents to circumvent the trial court's continuing and exclusive authority to determine the "best interest" of the child. However, this concern should be allayed by the requirement, in SAPCR matters, that the trial court determine, at a non-jury hearing, that an arbitrator's award is in the best interest of the child before enforcing the award. *See* TEX. FAM.CODE ANN. § 153.0071(b). This requirement gives parties the freedom to resolve controversies involving children without the expense and time of litigation, while at the same time preserving the ability of the court to ensure that the best interests of the child are protected.

Because Billy and Lynn properly initiated arbitration proceedings regarding the issues of Lynn's visitation and the residency restriction, and because the trial court lacked discretion to stay those proceedings, we hold that the trial court committed a clear abuse of discretion in staying the arbitration proceedings between Billy and Lynn, pending its decision concerning Jeanie's standing.

## Conclusion

We dismiss Billy's appeal for want of jurisdiction. However, we conditionally grant the writ of mandamus and direct the trial court to lift the stay of the arbitration proceedings. Writ will issue only if the trial court fails to do so.

We lift the stay granted in our December 17, 2003 order. All other pending motions are denied as moot.

---

**3.** Section 153.0071(c) states that "on the written agreement of the parties or on the court's own motion, *the court may refer a suit affect-ing the parent-child relationship to mediation.*" TEX. FAM.CODE ANN. § 153.0071(c) (emphasis added).