

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-07-293-CV

NORTHWEST CONSTRUCTION
COMPANY, INC.

APPELLANT

V.

THE OAK PARTNERS, L.P.,
MORGAN DEVELOPMENT
AND SUPPLY, INC.,
METROPLEX MASONRY, INC.,
ARI-TEX, INC., MAX PLUMBING
CONTRACTORS, INC.,
S & S TILE, LTD., AND
KENT-ANDERSON CONCRETE, L.P.
D/B/A ANDERSON CONCRETE
CONSTRUCTION

APPELLEES

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

AND

IN RE NORTHWEST                                         RELATOR
CONSTRUCTION COMPANY, INC.


------------

ORIGINAL PROCEEDING

------------

**OPINION**

------------

This consolidated mandamus proceeding and interlocutory appeal arise from the trial court's order denying relator and appellant Northwest Construction Company, Inc.'s motion to compel arbitration in the underlying suit involving construction of an assisted living center in Granbury, Texas.  In both the appeal and mandamus proceeding, Northwest raises the following four issues:  (1) whether there is a valid arbitration clause binding the parties that encompasses the dispute; (2) whether the trial court had jurisdiction to determine if Northwest waived its right to arbitrate the dispute; (3) whether the trial court erred by ruling that Northwest waived its right to arbitrate by substantially invoking the judicial process to the detriment of the other parties; and (4) whether appellees have waived their right to rely on mediation as a

condition precedent to the enforceability of the arbitration clause. We affirm the trial court's order in part and reverse it in part. We also dismiss Northwest's petition for writ of mandamus.

**Background Facts**

On April 27, 2004, Northwest entered into a construction contract with The Oak Partners, L.P., an appellee and real party in interest, to design and construct an assisted living facility in Granbury, Texas. The contract referenced the facility to be constructed as "more particularly described in the design development plans and specifications and design criteria identified in Exhibit B" attached to the contract. Exhibit B, in turn, provided that the project specifications were the "Project Manual for The Courtyards at Lake Granbury, Granbury, Texas, prepared by GSR Andrade Architects dated April 16, 2004." The April 16, 2004 Project Manual included a provision incorporating into it "[t]he 'General Conditions of the Contract for Construction', AIA Document A201, Fourteenth Edition, 1997, Articles 1 through 14 inclusive." A new Project Manual dated May 28, 2004 contained the same language.

AIA Document A201-1997 contains an arbitration clause, which reads as follows, in pertinent part:

> Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the

3

American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

The term "Claim" is defined as

a demand or assertion by one of the parties seeking, as a matter of right, adjustment or interpretation of Contract terms, payment of money, extension of time or other relief with respect to the terms of the Contract. The term "Claim" also includes other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract.

After entering into the contract with Oak Partners, Northwest entered into subcontractor agreements with S & S Tile, Ltd., Morgan Development and Supply, Inc., Metroplex Masonry, Inc., Ari-Tex, Inc., Kent-Anderson Concrete L.P. d/b/a Anderson Concrete Construction, and Max Plumbing Contractors, Inc. Each of the subcontract agreements contained the following provisions:

The terms of the dispute resolution and claims procedure contained in the General Contract shall be binding upon Subcontractor, whether or not Subcontractor records or files a mechanic's lien, stop notice or prosecutes suit thereon or against any bond posted by Contractor; and Subcontractor hereby acknowledges that this Subcontract waives, affects, and impairs rights it would otherwise have in connection with such liens, stop notices and suits on said bonds.

. . . .

Any disputes or controversies not resolved or settled by the parties under the previous provisions shall be submitted to binding arbitration in accordance with the Construction Industry Rules of the American Arbitration Association and any judgment upon the

4

award by the arbitrators may be entered by any court having jurisdiction. The venue for any hearing under this arbitration provision shall be in Dallas County, Texas.

After Northwest constructed the facility, Oak Partners sued Northwest on August 30, 2005, in the 355th District Court of Hood County, alleging that Northwest had breached the contract; Oak Partners claimed that the facility had failed to pass inspections by the Texas Department of Aging and Disability Services because certain parts of the design and construction were not in accordance with the Department's applicable rules and regulations. Northwest filed its original answer in the suit on December 12, 2005.

S & S Tile and Max Plumbing sued Oak Partners and Northwest in separate suits in the 355th District Court, claiming they were owed money on the project. On January 11, 2006, Northwest filed a motion to consolidate the Max Plumbing and Oak Partners cases. The trial court granted the motion the next day and consolidated the cases. On January 19, 2006, Northwest filed a motion to consolidate the S & S Tile case with the two consolidated cases. Before the trial court ruled on the motion to consolidate, S & S Tile filed a motion for summary judgment. While that motion was pending, the trial court granted Northwest's motion to consolidate the S & S Tile case with the other two cases on February 2, 2006.

5

Northwest filed a counterclaim against Oak Partners on February 3, 2006, alleging that Oak Partners breached the contract by failing to pay for change orders, causing delays, and refusing to release retainage. Northwest also brought causes of action for quantum meruit, promissory estoppel, and foreclosure of statutory and constitutional liens; a Prompt Payment Act claim; and a claim for attorneys' fees.

Northwest and Oak Partners filed responses to S & S Tile's motion for summary judgment on March 10, 2006. The motion was set for a hearing on March 17, 2006, but S & S Tile and Northwest entered into a rule 11 agreement to remove the motion from the court's docket.[1] The motion was never reset.

On February 17, 2006, Kent-Anderson filed a separate suit against Northwest and Oak Partners, which the trial court consolidated with the other three cases upon Northwest's motion. Oak Partners then filed a first amended petition adding GSR as an additional defendant and alleging causes of action for breach of contract and negligence. After the addition of GSR as a defendant, subcontractors Morgan Development and Supply, Inc., Metroplex Masonry, Inc., and Ari-Tex, Inc. intervened in the suit.

---

[1]The copy of the agreement in the record is signed only by counsel for S & S Tile and Northwest.

6

Northwest filed a motion for partial summary judgment on May 2, 2007. In it, Northwest sought a ruling that Oak Partners could not recover damages arising from design flaws or errors or omissions in the project design. Northwest asserted the affirmative defenses of estoppel, contractual bar, violation of the express negligence rule, and waiver. Oak Partners filed a response on May 30, 2007. GSR also filed a response and an affidavit in opposition to the motion.

On June 25, 2007, Northwest filed a First Amended Original Counterclaim and Original Cross-Claim, re-alleging its claims against Oak Partners, adding declaratory and unjust enrichment claims, and alleging cross-claims against GSR and the subcontractors. On July 9, 2007, Northwest filed a "Motion to Compel Arbitration" and a "Motion for Leave to Designate Responsible Third Parties," which it expressly made contingent upon the trial court's denial of its motion to compel arbitration.

The trial court denied Northwest's motion to compel arbitration on the ground that Northwest had waived its right to arbitration by substantially invoking the judicial process to the detriment of all of the opposing parties in the case.[2] Before this court, Oak Partners is the only party opposing

---

[2]At trial, the only parties who opposed Northwest's motion to compel arbitration were Oak Partners, Kent-Anderson, and Ari-Tex. Kent-Anderson has

7

Northwest's request for arbitration. Accordingly, we will review whether the trial court properly denied Northwest's motion to compel arbitration.

## This Court's Jurisdiction

To determine whether we have jurisdiction over the interlocutory appeal in addition to the mandamus petition, we must decide whether the trial court denied Northwest's motion to compel pursuant to the Federal Arbitration Act (FAA), the Texas General Arbitration Act (TGAA), or both. *See* 9 U.S.C.A. §§ 1-16 (West 1999 & Supp. 2007); TEX. CIV. PRAC. & REM. CODE ANN. §§ 171.001-.098 (Vernon 2005); *In re Citigroup Global Mkts., Inc*., 202 S.W.3d 477, 480 (Tex. App.—Dallas 2006, orig. proceeding). In Texas, a trial court's denial of arbitration under the FAA may be challenged only by mandamus and not by interlocutory appeal. *In re D. Wilson Constr. Co*., 196 S.W.3d 774, 779 (Tex. 2006) (orig. proceeding); *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 272 (Tex. 1992) (orig. proceeding). But a party may seek to enforce an arbitration agreement under both the FAA and TGAA if, like the agreement here, it does not say whether the FAA or TGAA applies. *D. Wilson Constr. Co*., 196 S.W.3d at 778-79. Texas appellate courts have jurisdiction over

---

indicated in both the appeal and mandamus proceeding that it no longer opposes arbitration, and Ari-Tex has not filed any documents in either cause in our court.

8

interlocutory appeals from the denial of arbitration under the TGAA only or under both the FAA and TGAA. TEX. CIV. PRAC. & REM. CODE ANN. § 171.098(a)(1); *D. Wilson Constr. Co*., 196 S.W.3d at 778-79.

Here, the agreement upon which Northwest relies does not purport to be governed by either the FAA or the TGAA. In its motion to compel, Northwest sought arbitration under both the FAA and TGAA. Oak Partners contends in its response to the petition for writ of mandamus that Northwest did not bring forward any evidence of interstate commerce showing that the agreement is enforceable under the FAA; thus, according to Oak Partners, enforceability of the agreement is governed by the TGAA only.

The trial court's order denying arbitration does not specify whether the denial was under the FAA or TGAA. Northwest filed both a petition for writ of mandamus and an interlocutory appeal in this court, contending that the agreement is enforceable under the TGAA as well as the FAA. Accordingly, we have jurisdiction over both the appeal and the mandamus unless the FAA pre-empts the TGAA in this instance. *See id*. at 779-80.

To determine whether an agreement that does not purport to be under either the FAA or TGAA is governed only by the FAA (i.e., whether the FAA pre-empts the TGAA), thus precluding an appellate court's jurisdiction over an interlocutory appeal, we must determine whether (1) the agreement is in

9

writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under traditional contract defenses, and (4) state law affects the enforceability of the agreement. 9 U.S.C.A. § 2; *D. Wilson Constr. Co*., 196 S.W.3d at 780; *In re Nexion Health at Humble, Inc*., 173 S.W.3d 67, 69 (Tex. 2005) (orig. proceeding). For the FAA to pre-empt the TGAA, state law must refuse to enforce an arbitration agreement that the FAA would enforce, either because (1) the TGAA has expressly exempted the agreement from coverage, or (2) the TGAA has imposed an enforceability requirement not found in the FAA. *D. Wilson Constr. Co*., 196 S.W.3d at 780. In other words, the FAA pre-empts only contrary state law, not consonant state law. *Id*. at 779.

We conclude that the FAA does not pre-empt the TGAA here. Northwest has not directed us to, nor have we found, any evidence of interstate commerce in the record. Likewise, Northwest did not direct the trial court to any such evidence. Because this suit involves a construction project, it is possible that materials may have come from out of state, but Northwest has not directed us to anything in the record to support that conclusion, nor have we found any evidence in the record that would support such a conclusion. *See, e.g.*, *In re Nasr*, 50 S.W.3d 23, 25-26 (Tex. App.—Beaumont 2001, orig. proceeding) (holding that construction contract involved interstate commerce because list of subcontractors in record included Wal-Mart). We hold that

10

Northwest has failed to prove that the arbitration agreement involves interstate commerce; thus, the FAA does not pre-empt the TGAA in this instance, and we have jurisdiction over Northwest's interlocutory appeal. For the same reason, we do not have jurisdiction to grant relief on Northwest's petition for writ of mandamus. *See In re D. Wilson Constr. Co.*, 196 S.W.3d at 779. Because we have jurisdiction over the interlocutory appeal only, we will address Northwest's issues within the context of that proceeding.

**Existence of Valid Arbitration Agreement**

In its first issue, Northwest contends that it proved the existence of a valid arbitration agreement and that all of the claims asserted against it in the underlying suit are within the scope of that agreement. Oak Partners responds that Northwest failed to prove that all claims were within the scope of a valid arbitration agreement because

> Northwest . . . did not present any evidence at the hearing on its Motion to Compel. The only documents presented were unsworn and unauthenticated exhibits to its Motion to Compel, and even those exhibits do not contain enough information to make an informed decision regarding whether the documents refer to each other or are all a part of the construction contract at issue in this case.

In *Jack B. Anglin Co. v. Tipps*, the Texas Supreme Court held that "the trial court may summarily decide whether to compel arbitration on the basis of affidavits, pleadings, discovery, and stipulations"; the trial court is not required

11

to conduct an evidentiary hearing unless the "material facts necessary to determine the issue" are controverted. 842 S.W.2d 266, 269 (Tex. 1992). Northwest attached the contract, and the pertinent documents that were incorporated into it by reference, to its motion to compel. The trial court clearly reviewed these documents at the hearing on the motion to compel.[3] *See* TEX. R. EVID. 201; *Barnard v. Barnard*, 133 S.W.3d 782, 786 (Tex. App.—Fort Worth 2004, pet. denied) ("[T]he trial court may take judicial notice of its file at any stage of proceedings and is presumed to have done so with or without a request from a party."). At the conclusion of the hearing, the trial court concluded, "Well, of course, it appears that there's an arbitration provision here in this contract. The issue would certainly seem to be whether or not there has been a waiver."

We conclude that the trial court properly determined, based on the procedure promulgated in *Tipps*, that a valid arbitration existed and that the

---

[3]For example, during a discussion between Northwest's counsel and the trial court regarding the exhibits attached to the motion to compel, the following exchange occurred:

THE COURT:     Where are you again?

[NORTHWEST'S COUNSEL]: The very first page.

THE COURT:     All right. I see it.

12

claims in the underlying suit were included within the scope of that agreement.[4]

We sustain Northwest's first issue; however, we must address its remaining issues relating to whether the trial court properly determined that it waived its right to arbitrate.

## Subject Matter Jurisdiction of Trial Court

Northwest argues in its second issue that the trial court did not have subject matter jurisdiction to decide whether it waived its right to arbitration because, once a trial court decides that a dispute is subject to arbitration, the arbitrator must determine any defenses to arbitration raised by an opposing party, including waiver.

In support of its contention, Northwest relies on *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 123 S. Ct. 588 (2002). In that case, the United States Supreme Court held that "'procedural' questions which grow out of the dispute and bear on its final disposition' are presumptively *not* for the judge, but

---

[4]Oak Partners attached to its response to Northwest's motion to compel an affidavit from Teresa Shook, a Director of Assisted Living Consultants, Inc., which is a managing member of the general partner of Oak Partners. In her affidavit, Shook asserted that "Oak Partners did not agree to be bound by arbitration, and does not agree it is bound by arbitration." But this conclusory statement, without more, does nothing to controvert the evidence of the agreement as attached to Northwest's motion to compel. Moreover, Oak Partners never challenged the existence of an arbitration agreement in its response, which was premised solely on its contention that Northwest waived its right to arbitrate.

13

for an arbitrator, to decide. . . .  So, too, the presumption is that the arbitrator should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" *Id*. at 84, 123 S. Ct. at 592 (citations omitted).  The issue in *Howsam* was not whether the trial court had *subject matter jurisdiction* to determine such procedural questions; rather, it was whether the presumption in favor of arbitration should be employed when determining which "forum-based decisionmaker"—an arbitrator or trial court judge—is the more appropriate choice "to decide forum-specific procedural gateway matters."  *Id*. at 84-86, 123 S. Ct. at 592-93.  In *Howsam*, the petitioner had instituted an arbitration proceeding under the National Association of Securities Dealers (NASD) rules, and the respondent filed suit in federal court asking for a declaration that the arbitration could not proceed because NASD's rules prohibited arbitrations after "six (6) years ha[d] elapsed from the occurrence or event giving rise to the . . . dispute."  *Id*. at 81-82, 123 S. Ct. at 590-91.  In determining that the arbitrator was the more appropriate "forum-based decisionmaker" to decide whether the NASD rule operated to bar arbitration of the dispute, the Supreme Court noted that "NASD arbitrators, comparatively more expert about the meaning of their own rule, [would be] better able to interpret and to apply it."  *Id*. at 85, 123 S. Ct. at 593.  The Court also relied on its prior decision in

14

*Moses H. Cone Memorial Hospital v. Mercury Construction*, in which it stated

that

> [t]he Arbitration Act establishes that, as a matter of federal law, *any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration*, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

460 U.S. 1, 24-25, 103 S. Ct. 927, 941 (1983) (emphasis added); *see also In re Serv. Corp. Int'l*, 85 S.W.3d 171, 173 (Tex. 2002) (quoting above passage from *Moses*, yet going on to address merits of trial court's decision on waiver).

After carefully considering the Court's precise language and holding in *Howsam*, and the *Moses H. Cone* case which it cites, we conclude that the issue here is not one of subject matter jurisdiction; rather, it is whether the *presumption* in favor of arbitrability should apply to the determination of which "forum-based decisionmaker"[5] is better suited to decide the procedural questions, such as "waiver, delay or a like defense to arbitrability."[6] Because

---

[5]*See In re Neutral Posture, Inc.*, 135 S.W.3d 725, 728 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding) (discussing *Howsam* and holding that trial court was proper *forum* for determining issue of substantive arbitrability).

[6]Thus, we need not decide whether this court should follow *Howsam* in the context of reviewing a trial court's decision under the TGAA. *See Grand Homes 96, L.P. v. Loudermilk*, 208 S.W.3d 696, 703 (Tex. App.—Fort Worth 2006, pet. filed); *see also In re Global Constr. Co.*, 166 S.W.3d 795, 798 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding) (conditionally granting writ

15

the issue is not one of subject matter jurisdiction, Northwest was required to raise it in the trial court; it did not. *See* TEX. R. APP. P. 33.1(a); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006). In fact, at the hearing on the motion to compel, Northwest told the trial court that it would have to decide the issue, arguing that

> the court must consider three questions; was there an agreement or set of agreements to arbitrate, whether the dispute . . . is subject to those agreements to arbitrate? If you answer . . . those first two questions, 'Yes,' then you must abate the action and must *order the case to arbitration, unless Oak Partners or one of the other parties is able to prove waiver.*" [Emphasis added.]

Northwest and Oak Partners both devoted the majority of their arguments at the motion to compel hearing to whether Northwest had substantially invoked the judicial process to Oak Partners' detriment. Accordingly, we conclude and hold that Northwest failed to preserve its complaint that the arbitrator, rather than the trial court, should have determined whether it waived its right to arbitrate by substantially invoking the judicial process to its opponents' detriment. We overrule Northwest's second issue.

---

of mandamus after holding, based on *Howsam*, that arbitrator rather than trial court should decide waiver issue in FAA-controlled case).

16

**Whether Northwest Waived its Right to Arbitrate by Substantially Invoking the Judicial Process to Oak Partners' Detriment**

Northwest contends in its third issue that the trial court incorrectly concluded that Northwest had waived its right to arbitrate any part of the dispute by substantially invoking the judicial process to its opponents' detriment.

Because public policy favors arbitration, there is a strong presumption against finding that a party has waived its right to arbitration; the burden to prove waiver is thus a heavy one. *In re Bank One, N.A.*, 216 S.W.3d 825, 827 (Tex. 2007); *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704-05 (Tex. 1998); *Jones v. Citibank (South Dakota), N.A.*, 235 S.W.3d 333, 340 (Tex. App.—Fort Worth 2007, no pet.). Any doubts regarding waiver are resolved in favor of arbitration. *Bruce Terminix Co.*, 988 S.W.2d at 705; *Jones*, 235 S.W.3d at 340; *Southwind Group, Inc. v. Landwehr*, 188 S.W.3d 730, 735 (Tex. App.—Eastland 2006, orig. proceeding). Waiver may be express or implied, but it must be intentional. *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996); *Jones*, 235 S.W.3d at 340; *Southwind Group, Inc.*, 188 S.W.3d at 735. Whether waiver occurs depends on the individual facts and circumstances of each case. *Jones*, 235 S.W.3d at 340; *Southwind Group,*

*Inc.*, 188 S.W.3d at 735; *Williams Indus., Inc. v. Earth Dev. Sys. Corp.*, 110 S.W.3d 131, 135 (Tex. App.—Houston [1st Dist.] 2003, no pet.).

A party does not waive arbitration merely by delay; instead, the party urging waiver must establish that any delay resulted in prejudice. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006); *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 898-99 (Tex. 1995) (orig. proceeding); *Jones*, 235 S.W.3d at 340. Therefore, the test for determining waiver is two-pronged: (1) did the party seeking arbitration substantially invoke the judicial process, and (2) did the opposing party prove that it suffered prejudice as a result. *Jones*, 235 S.W.3d at 340.

**Substantial Invocation of Judicial Process**

Merely taking part in litigation does not constitute substantial invocation of the judicial process. *See In re Vesta Ins. Group*, 192 S.W.3d at 763; *Bruce Terminix Co.*, 988 S.W.2d at 704; *Jones*, 235 S.W.3d at 340. To substantially invoke the judicial process, a party must make a specific and deliberate act after suit is filed that is inconsistent with its right to arbitrate, such as engaging in extensive discovery or requesting a jury. *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 522 (Tex. App.—Austin 1998, no pet.). Substantially invoking the judicial process may occur when the party seeking arbitration actively has tried, but failed, to achieve a satisfactory result in litigation before

18

turning to arbitration. *Jones*, 235 S.W.3d at 340; *Southwind Group, Inc.*, 188 S.W.3d at 736; *Williams Indus., Inc.*, 110 S.W.3d at 135. Examples include moving for summary judgment or seeking a final resolution of the dispute. *Williams Indus., Inc.*, 110 S.W.3d at 135. Another factor to consider is how much activity has taken place in the suit. *Vireo, P.L.L.C. v. Cates*, 953 S.W.2d 489, 497 (Tex. App.—Austin 1997, pet. denied). Actions constituting waiver may include the movant's engaging in some combination of the following: filing an answer, setting up a counterclaim, pursuing discovery, and moving for a continuance prior to moving for a stay pending arbitration. *Cent. Nat'l Ins. Co. of Omaha v. Lerner*, 856 S.W.2d 492, 494 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding); *see also In re Vesta Ins. Group*, 192 S.W.3d at 764 (holding, in FAA-controlled case, "We agree that allowing a party to conduct full discovery, file motions going to the merits, and seek arbitration only on the eve of trial defeats the FAA's goal of resolving disputes without the delay and expense of litigation.").[7]

The evidence here shows that during the approximately nineteen months from the time it filed its answer in the suit to the time it filed its motion to

---

[7]The standard for determining waiver of the right to arbitrate is the same under the TGAA and the FAA. *Southwind Group, Inc.*, 188 S.W.3d at 735; *Brown v. Anderson*, 102 S.W.3d 245, 250 (Tex. App.—Beaumont 2003, pet. denied).

compel arbitration, Northwest served four sets of interrogatories, and one set each of requests for production and requests for admissions, to Oak Partners; served one set each of interrogatories, requests for disclosure, and requests for production on the subcontractors; filed four subpeonas for production of documents from third parties; filed a counterclaim and amended counterclaim against Oak Partners; filed cross-claims against the subcontractors; filed a motion for partial summary judgment seeking to preclude Oak Partners from seeking any damages related to design defects in the facility; agreed to extensions of the expert designation deadlines; and agreed to at least one extension of the trial setting. Northwest points out that it never received a ruling on its partial motion for summary judgment and that the motion did not request a final ruling on all of Oak Partners' claims; it also characterizes its discovery as "minimal."

Northwest focuses on its various activities in the suit in isolation; however, when viewed together, all of Northwest's actions in the suit indicate an intention to avail itself of the judicial process. Northwest admitted at the hearing on the motion to compel that it sought discovery to aid in mediation and that the failure of mediation was the impetus for its motion to compel arbitration. In other words, it appears that Northwest was prepared to avail itself of the judicial process so long as it was able to achieve the results it

20

desired. When Northwest finally filed its motion to compel in July 2007, trial was set for September 24, 2007. We conclude and hold that Northwest's activity in the suit constituted substantial invocation of the judicial process. *See In re Vesta Ins. Group*, 192 S.W.3d at 764; *Lerner*, 856 S.W.2d at 495; *see also Price v. Drexel Burnham Lambert, Inc*., 791 F.2d 1156, 1159, 1162 (5th Cir. 1986).

**Prejudice to Opposing Parties**

Northwest claims that even if it substantially invoked the judicial process, Oak Partners and the other parties to the suit, i.e., the subcontractors, failed to show prejudice as a result; thus, the trial court erred by finding that Northwest had waived its right to arbitrate the dispute. According to Northwest, the discovery it sought and obtained in the suit is also discoverable in arbitration under the Construction Industry Arbitration Rules of the American Arbitration Association, and Oak Partners cannot show that its attorneys' fees would not have been available to it in arbitration. Further, Northwest contends that even if Oak Partners is able to show prejudice, the subcontractors did not bring forward any evidence of prejudice; thus, the trial court erred in determining that Northwest waived arbitration as to all of the parties in the suit.

The prejudice on which courts focus includes such things as (1) the movant's access to information that is not discoverable in arbitration and (2)

21

the opponent's incurring costs and fees due to the movant's actions or delay. *Williams Indus., Inc.*, 110 S.W.3d at 135. Although delay alone does not necessarily show prejudice, it is a material factor to consider. *Sedillo v. Campbell*, 5 S.W.3d 824, 828 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Showing prejudice is generally an evidentiary burden. *Williams Indus., Inc.*, 110 S.W.3d at 135.

Northwest contends that all of the discovery it propounded would be available to it in an arbitration proceeding under the AAA's construction-related arbitration rules, which the parties agreed to employ in the event of arbitration. Those rules provide that "[a]t the request of any party or at the discretion of the arbitrator, consistent with the expedited nature of arbitration, the arbitrator may direct (i) the production of documents and other information, and (ii) the identification of any witnesses to be called." They also compel the parties to "exchange copies of all exhibits they intend to submit at the [arbitration] hearing" at least five business days prior to the hearing. The rules further provide that "[t]here shall be no other discovery, except as indicated herein or as ordered by the arbitrator in extraordinary cases when the demands of justice require it."

Oak Partners correctly points out that the applicable arbitration rules do not provide for requests for admissions or for interrogatories, which constituted

22

the bulk of the discovery Northwest sought from Oak Partners.[8]  Oak Partners

incurred legal fees for counsel and local counsel to review and respond to this

discovery.[9]  At the hearing on Northwest's motion to compel, Oak Partners

offered as evidence an affidavit from its counsel averring that Northwest had

served on Oak Partners four sets of interrogatories and one set each of a

request for admissions, request for disclosure, and request for production.  Oak

---

[8]Northwest acknowledges that requests for admissions and interrogatories are not available under the applicable rules except "in extraordinary cases when the demands of justice require it."  However, Northwest contends that all of the information included in those forms of discovery would be nevertheless discoverable in arbitration via other forms of discovery.  Regardless, Oak Partners presented evidence of its expense and time related specifically to the types of discovery that is unavailable in arbitration, and there is no evidence that this is the type of extraordinary case in which an arbitrator would allow additional discovery.

[9]Northwest attributes any prejudice caused by Oak Partners' engaging local counsel to Oak Partners' own decision to sue in its chosen forum.  *See LJA Eng'g and Surveying, Inc. v. Richfield Inv. Corp*., 211 S.W.3d 443, 446-47 (Tex. App.—Beaumont 2006, no pet.); *Transwestern Pipeline Co. v. Horizon Oil & Gas Co*., 809 S.W.2d 589, 593 (Tex. App.—Dallas 1991, writ dism'd w.o.j.).  But it is clear from the billing records submitted by Oak Partners that local counsel did not even begin to participate in the suit until Northwest filed its counterclaim and began to participate in those activities that we have determined substantially invoked the judicial process by indicating an intent to litigate the suit in Hood County.  Thus, Oak Partners presented evidence directly relating its expenses to Northwest's activity in the suit.

23

Partner's counsel also averred that "Oak Partners has answered, responded, and/or objected to all of this discovery sent by Northwest."[10]

Oak Partners also introduced evidence that it incurred attorney's fees and expenses in responding to Northwest's motion for partial summary judgment. Northwest did not cancel the partial summary judgment trial date until after Oak Partners had filed its response and incurred these fees and expenses. Moreover, Oak Partners contends that, regardless of the fees and expenses involved in responding to the motion, it was prejudiced because Northwest "now has in one document, forced Oak Partners to marshal its evidence, and even more damaging, marshal the thought processes and legal analysis of Oak Partners' attorneys on these issues."

Northwest responds that the construction industry arbitration rules provide for summary dispositions by the arbitrator: "In addition to the final award, the arbitrator may make other decisions, including interim, interlocutory,

_____

[10]Although Oak Partners did not include copies of its answers to discovery in the appellate record, it did provide evidence that it answered the discovery and incurred expenses in doing so, in the form of billing records from its lead counsel and local counsel. Northwest did not present any evidence refuting Oak Partners' counsel's sworn statement indicating that Oak Partners had responded to all of Northwest's discovery requests. Additionally, Northwest admitted that it sought discovery for mediation purposes and that after the initial mediation, it sought additional discovery for purposes of another mediation.

24

or partial rulings, orders, and awards."   Thus, according to Northwest, Oak Partners could not have been prejudiced by responding to the motion for partial summary judgment when the same procedure would have been available to Northwest in arbitration.

Again, Northwest focuses only on the effects of its actions in isolation. Not only did it delay nineteen months before moving to compel arbitration, during which time it actively pursued litigation in the trial court, Northwest also sought discovery that cannot be characterized as only minimal.[11]  It actively sought relief from the trial court, forcing Oak Partners to respond and to incur attorneys' fees for lead counsel and local counsel that are directly linked to Northwest's actions in the suit, which fees Oak Partners documented in its response to the motion to compel.[12]  Unlike in cases cited by Northwest, here,

---

[11]*See, e.g., In re Bruce Terminix Co.*, 988 S.W.2d at 704 (holding, when movant's "use of the judicial process was limited to filing an answer and propounding one set of eighteen interrogatories and one set of nineteen requests for production," that prejudice was not shown because "when only a *minimal amount of discovery* has been conducted, which may also be useful for the purpose of arbitration, the court should not ordinarily infer waiver based upon prejudice") (emphasis added).

[12]Northwest contends that Oak Partners cannot show prejudice due to its incurring attorneys' fees as a result of Northwest's actions (1) because the construction industry arbitration rules provide that an arbitration award "may include . . . an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement" and because (2) section 171.048 of the TGAA requires arbitrators to award attorneys' fees if

25

Oak Partners introduced evidence supporting its claims of prejudice. *Cf. In re Vesta Ins. Group*, 192 S.W.3d at 763 ("Because Cashion offered none of these documents in the trial court and presented no details about any of them, the record does not show whether these [discovery] requests were limited or extensive, whether they sought information for affirmative claims or defensive ones, or even whether they addressed the merits or merely the arbitration issue."); *Granite Constr. Co. v. Beaty*, 130 S.W.3d 362, 367 (Tex. App.—Beaumont 2004, no pet.); *Williams Indus., Inc.*, 110 S.W.3d at 139-41. Accordingly, we conclude and hold that Oak Partners showed prejudice from Northwest's substantial invocation of the judicial process. *See Price*, 791 F.2d at 1161-62 ("[W]here a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration

---

they are provided for in the arbitration agreement or they are provided for by law in a district court in a civil action. TEX. CIV. PRAC. & REM. CODE ANN. § 171.048 (Vernon 2005). But the language of the construction industry arbitration rules does not *require* an arbitrator to award fees even if a party presents evidence supporting such an award. Additionally, Northwest's claims against Oak Partners include claims for breach of contract and negligence; Oak Partners' attorneys' fees are recoverable only if it prevails on its breach of contract action. *See id*. § 38.001(8) (Vernon 1997); *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997).

may more easily show that its position has been compromised, i.e., prejudiced.").

Northwest did not just move to arbitrate Oak Partners' claims, however; it also sought to arbitrate the claims involving the subcontractors. None of the subcontractors presented evidence to the trial court regarding prejudice. Thus, we cannot conclude that waiver was proved as to the subcontractors. *See, e.g., Granite Constr. Co.*, 130 S.W.3d at 367; *Williams Indus., Inc.*, 110 S.W.3d at 139-41. Because the trial court's order denied Northwest's motion to compel in its entirety as to all parties, we conclude and hold that the trial court erred by refusing to compel arbitration of the claims between Northwest and the subcontractors.[13] We therefore sustain Northwest's third issue in part as to the claims involving the subcontractors; we overrule it in part as to the claims between Northwest and Oak Partners.

---

[13]We realize this results in the unfortunate possibility of trying these cases in different forums but "considerations of efficiency and convenience cannot override either a signatory's arbitration agreement or a nonsignatory's right to a jury trial." *In re Merrill Lynch Trust Co. FSB,* 235 S.W.3d 185, 192 (Tex. 2007) (orig. proceeding) (holding arbitration agreement must be enforced regardless of presence of other people involved in the underlying dispute but not signatories to the arbitration agreement); *see also Kilroy v. Kilroy,* 137 S.W.3d 780, 787-88 (Tex. App.—Hous. [1st Dist.] 2004, no pet.) (reversing trial court order staying arbitrable part of dispute pending determination of issues in nonarbitrable part of dispute remaining in trial court).

**Mediation as Condition Precedent to Arbitration**

At the hearing on the motion to compel, one of the subcontractors, Ari-Tex, argued that the arbitration agreement with the subcontractors required Northwest to mediate before resorting to arbitration and that Northwest had failed to mediate with the subcontractors;[14] therefore, arbitration could not be compelled until Northwest had attempted to mediate its disputes with the subcontractors. Ari-Tex has not responded to Northwest's appeal; however, Northwest brings a fourth issue contending that appellees have waived their right to rely on mediation as a condition precedent to enforceability of the arbitration clause.

Although the AIA Document A201-1997 that was incorporated into the parties' agreements clearly states that mediation is a condition precedent to arbitration with regard to at least some claims arising from the agreements, none of the subcontractors allege any damages from Northwest's failure to mediate with them. *See In re U.S. Home Corp*., 236 S.W.3d 761, 764 (Tex. 2007). Moreover, the subcontractors initially filed suit against Northwest in district court rather than seeking mediation pursuant to the agreements. Thus,

---

[14]Ari-Tex alleged that the subcontractors were not allowed to attend the mediation between Northwest and Oak Partners.

they waived their right to first proceed through mediation. *See id*.; *Dallas Cardiology Assocs., P.A. v. Mallick*, 978 S.W.2d 209, 212-13 (Tex. App.—Texarkana 1998, pet. denied).

## Conclusion

Having overruled Northwest's dispositive issues as to Oak Partners, we affirm the part of the trial court's order denying Northwest's motion to compel arbitration as to the claims between Northwest and Oak Partners. However, having sustained Northwest's dispositive issue as to the subcontractors, we reverse the part of the trial court's order denying arbitration as to the claims between Northwest and the subcontractors and remand to the trial court with instructions to compel arbitration as to those claims only. Having determined that Northwest failed to bring forward any evidence of interstate commerce, we dismiss its petition for writ of mandamus.

TERRIE LIVINGSTON
JUSTICE

PANEL B:   LIVINGSTON, DAUPHINOT, and WALKER, JJ.

DAUPHINOT, J. filed a concurring and dissenting opinion.

DELIVERED:  March 6, 2008

29



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-293-CV

NORTHWEST CONSTRUCTION COMPANY, INC.                    APPELLANT

V.

THE OAK PARTNERS, L.P.,                    APPELLEES
MORGAN DEVELOPMENT
AND SUPPLY, INC.,
METROPLEX MASONRY, INC.,
ARI-TEX, INC., MAX PLUMBING
CONTRACTORS, INC.,
S & S TILE, LTD., AND
KENT-ANDERSON CONCRETE, L.P.
D/B/A ANDERSON CONCRETE
CONSTRUCTION

------------

FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

------------

AND

**NO. 2-07-328-CV**

IN RE NORTHWEST                                                                      RELATOR
CONSTRUCTION COMPANY, INC.

------------

ORIGINAL PROCEEDING

------------

# CONCURRING AND DISSENTING OPINION

------------

I agree that Northwest's petition for writ of mandamus should be dismissed. I also agree that we should reverse the trial court's order denying arbitration as to the claims between Northwest and the subcontractors and remand to the trial court with instructions to compel arbitration on those claims.

I dissent, however, from the majority's conclusion that Oak Partners met its heavy burden to show sufficient prejudice to overcome the strong presumption against waiver of arbitration.[15] I would therefore reverse in its entirety the trial court's order denying arbitration and remand this case to the trial court with instructions to compel arbitration on all claims.

LEE ANN DAUPHINOT
JUSTICE

---

[15]*See In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006); *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 763 (Tex. 2006).

31

DELIVERED: March 6, 2008