NUMBER 13-08-00408-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


IN THE GUARDIANSHIP OF RAQUEL CANTU DE VILLARREAL,


AN INCAPACITATED PERSON


 


On appeal from the County Court at Law No. 2 


of Cameron County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Benavides 


Memorandum Opinion by Justice Rodriguez



 This appeal arises from the guardianship proceeding of Raquel Cantú de Villarreal
("Doña Raquel"). Doña Raquel, an elderly widow, is the mother of seven adult children,
including appellants, Ignacio Villarreal Cantú, Consuelo Villarreal Cantú, Fernando
Villarreal Cantú, and Martha Guadalupe Villarreal Cantú, and appellee, Raquel Villarreal
Cantú, appearing herein individually and in her capacity as permanent guardian of the
person of Doña Raquel. (1) Disputes between the children regarding Doña Raquel's care and
custody and the disposition of her sizeable estate have given rise to a series of highly
contentious legal proceedings, including three appeals and two original proceedings. (2)
 We
will not address the factual and procedural underpinnings of these disputes herein except
as necessary to address the legal issues pertinent to this appeal. See Tex. R. App. P.
47.1, 47.4. 

 In this proceeding, Ignacio, Fernando, Consuelo, and Martha appeal two post-judgment orders of the trial court. We affirm, in part, and dismiss, in part, as further stated
herein.

I. Background


 On February 12, 2008, Doña Raquel's children entered into an "Irrevocable Family
Settlement Agreement, Assignment, and Release and Rule 11 Agreement," which
purported to settle all claims and controversies between the children regarding their
mother's care and support and the ownership, transfer, and control of her property. 
Pursuant to the settlement agreement, the children agreed, inter alia, to create a trust and
fund it with the portions of their mother's estate that they controlled. The agreement
provides, in part:

 All parties agree that the estate of Raquel Cantú de Villarreal consists of the
34 million pesos in the form of a check in a court in Mexico and whatever
money that is in the temporary guardian of the estate's accounts in the
United States. By copy of this Agreement all parties shall instruct their
attorneys to take all necessary steps to have these funds released and
delivered to [the] below mentioned Mexican Trust that shall be created. The
money in the accounts in the United States of the temporary guardian of the
estate, Jaime Diaz, shall also be placed in such Mexican Trust. This
mentioned Mexico property shall be administered by a Mexican Trust to be
drafted by Carlos Lugo and Miguel Angel Abramo Martinez. 


 The following properties belong to the seven children of Raquel Cantú de
Villarreal and shall be placed into hotchpotch and distributed among and
between the seven children of Raquel Cantú de Villarreal[:] a) all shares of
San Pedro Impulsora De Immuebles Especiales S.A. de C.V., and any and
all assets of such company[;] b) real estate properties in Exhibits "1" and "2"
. . . and c) the below mentioned properties that are stated to be part of
Hotchpotch. (3)


The trial court approved the settlement and incorporated it into the final judgment in the
case by a first amended order signed on February 14, 2008. 

 Alleging that Ignacio, Consuelo, and Martha breached the agreement and failed to
abide by the judgment, Raquel moved for an accounting and for contempt and asked for
a temporary restraining order and temporary and permanent injunctions. The gravamen
of Raquel's complaint was that appellants withdrew the 34 million pesos referenced in the
settlement agreement from the possession of the Mexican court, but failed to deposit the
monies into the Mexican trust as required by the agreement and judgment. 

 On June 11, the trial court entered an order granting Raquel's motion. The order
reads, in part:

 IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that
IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ,
CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ
are Ordered within 10 days from the entry of this Order, to deposit the
$35,000,000.00 pesos (4) listed in Paragraph 14 of the "Irrevocable Family
Settlement Agreement, Assignment, and Release and Rule 11 Agreement"
(attached hereto and fully incorporated into this Order) into an account
created for the benefit of the trust referenced in said paragraph 14 of the
"Family Settlement Agreement, Assignment, and Release and Rule 11
Agreement."


 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ,
CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ 
are Ordered, within 10 days from the entry of this Order, to provide a detailed
accounting to this Court as to the whereabouts of said $35,000,000.00 pesos
listed in paragraph 14 of the "Irrevocable Family Settlement Agreement,
Assignment, and Release and Rule 11 Agreement." Said accounting is to
include the financial institution where said funds are on deposit, the name of
the person under whose name the funds are on deposit, the signatories on
said account, the type of account, and the account number.


 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ,
CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ,
in a manner consistent with the above terms of this Order, deposit said funds
into an account which will be under the joint control of Ignacio Villarreal and
Marcelo Villarreal[.]


 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that
IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ,
CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ
are enjoined from selling, encumbering or otherwise transferring any of the
real estate properties described in Exhibits 1 and 2 of the "Irrevocable Family
Settlement Agreement, Assignment, and Release and Rule 11 Agreement"
in any manner inconsistent with the disposition of said properties as provided
in said Family Settlement Agreement.


 IT IS THEREFORE ORDERED that a final hearing on PETITIONER
RAQUEL VILLARREAL'S SECOND AMENDED MOTION FOR
ACCOUNTING OF THE $34 MILLION PESOS WITHDRAWN BY
RESPONDENTS AND THE REAL ESTATE PROPERTY WHICH IS THE
SUBJECT OF THIS LAWSUIT, AND TEMPORARY INJUNCTION be set on
June 27, 2008, at 1:30 p.m. . . . At such time, IGNACIO VILLARREAL
CANTÚ, FERNANDO VILLARREAL CANTÚ, CONSUELO VILLARREAL
CANTÚ and/or MARTHA VILLARREAL CANTÚ are ORDERED to appear
before this Court to show their compliance with this Court's Order herein to
show why this Court's Order should be vacated.


On June 27, Ignacio, Fernando, Consuelo and Martha failed to appear, and accordingly,
the trial court entered an order for issuance of writs of attachment against them. 

 This appeal ensued. In their first issue, appellants contend that the order entered
by the trial court on June 11, 2008, is a void temporary injunction because: (1) it is not
based on a verified application; (2) it is not supported by any evidence admitted at the
injunction hearing; and (3) it fails to set a bond. In their second issue, appellants argue
that the June 27 order for issuance of writs of attachment should be reversed, and the writs
ordered withdrawn, because: (1) the motion for contempt was not verified; (2) the trial
court lacked the authority to enforce a temporary injunction that was on appeal; and (3) the
underlying temporary injunction must be reversed and the injunction dissolved because it
fails to comply with Texas Law. 

II. Jurisdiction


 Generally, appeals may be taken only from final judgments. Lehmann v. Har-Con
Corp., 39 S.W.3d 191, 195 (Tex. 2001). Accordingly, a party may not appeal an
interlocutory order unless authorized by statute. Bally Total Fitness Corp. v. Jackson, 53
S.W.3d 352, 352 (Tex. 2001); Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex.
1992) (orig. proceeding); see Ogletree v. Matthews, 262 S.W.3d 316, 319 (Tex. 2007). If
we lack jurisdiction, we must dismiss the attempted appeal. See Kilroy v. Kilroy, 137
S.W.3d 780, 783 (Tex. App.-Houston [1st Dist.] 2004, no pet.). 

 Given that the orders under review in this appeal are post-judgment orders of the
trial court, rather than a final judgment, we will examine our jurisdiction over each of these
orders individually. 

III. Post-Judgment Order of June 11


 A court has the inherent power to enforce its judgments, even after the expiration
of its plenary power, and the court may employ suitable methods in doing so. See Tex. R.
Civ. P. 308; Arndt v. Farris, 633 S.W.2d 497, 499 (Tex. 1982); Ex parte Gorena, 595
S.W.2d 841, 844 (Tex. 1979); see also In re Crow-Billingsley Air Park, Ltd., 98 S.W.3d
178, 179 (Tex. 2003) (holding that the "trial court has an affirmative duty to enforce its
judgment" under Rule 308). Generally, an order made for the purpose of carrying into
effect an already-entered judgment is not a final judgment or decree and cannot be
appealed as such. See Wagner v. Warnasch, 156 Tex. 334, 295 S.W.2d 890, 893 (Tex.
1956); see also Tex. Civ. Prac. & Rem. Code Ann. § 51.012 (Vernon 2008) (providing that
final judgments of trial courts are appealable); Tex. R. Civ. P. 301 ("Only one final judgment
shall be rendered in any cause except where it is otherwise specially provided by law."). 
The "usual writs and orders to aid in execution to collect a final money judgment are not,
in general, appealable orders." Schultz v. 5th Jud. Dist. Court of Appeals of Dallas, 810
S.W.2d 738, 740 (Tex. 1991). If the order is not an appealable one, jurisdiction does not
attach in the court of appeals. Id. at n.6. On the other hand, some post-judgment orders
are appealable. Id. at 740 (finding that a turnover order, which resolved property rights and
acted "in the nature of a mandatory injunction," was appealable). As a general rule, for
instance, turnover orders (5) are final, appealable orders. See Burns v. Miller, Hiersche,
Martens & Hayward, P.C., 909 S.W.2d 505, 506 (Tex. 1995); Pandozy v. Beaty, 254
S.W.3d 613, 617 (Tex. App.-Texarkana 2008, no pet.); In re Hamel, 180 S.W.3d 226, 229
(Tex. App.-San Antonio 2005, orig. proceeding).

 We look to the substance of the order to determine whether it is appealable. See,
e.g., Wagner, 295 S.W.2d at 892 (looking to the nature of the post-judgment relief granted
in the order as opposed to the relief actually requested in the motion); cf. Surgitek,
Bristol-Myers Corp. v. Abel, 997 S.W.2d 598, 601 (Tex. 1999) (construing the substance
of a motion, rather than its title, to determine the availability of interlocutory appeal); accord
Burke v. Union Pac. Res. Co., 138 S.W.3d 46, 60 (Tex. App.-Texarkana 2004, pet.
denied, pet. dism'd [2 pets.]) ("A motion should be construed by its substance to determine
the relief sought, not merely by its form or caption.").

 The order at issue is entitled "Order Granting Petitioner Raquel Villarreal's Second
Amended Motion for Accounting of the $34 Million Pesos Withdrawn by Respondents and
the Real Estate Property Which is the Subject of this Lawsuit, and Temporary Injunction."

The substance of the order requires affirmative action by appellants. It orders the 35
million pesos described in the settlement agreement to be placed into an account created
for the benefit of the trust referenced in the settlement agreement. It orders appellants to
provide a detailed accounting to the court regarding the location of the money at issue. It
enjoins appellants from selling, encumbering, or transferring real estate properties
referenced in the trust in any manner inconsistent with the settlement agreement. In short,
it orders property to be collected, or turned over, and acts as a mandatory injunction as to
the judgment debtors or transferees. We conclude that the order at issue acts "in the
nature of a mandatory injunction," which makes it appealable. See Schultz, 810 S.W.2d
at 740; Kennedy v. Hudnall, 249 S.W.3d 520, 524 (Tex. App.-Texarkana 2008, no pet.). 
Accordingly, we have jurisdiction over the appeal of this order, and will proceed to address
the merits of appellants' issues regarding this order. 

 By their first issue, appellants contend that the June 11 "temporary injunction" is void
because: (1) the motion seeking injunctive relief was not verified; (2) the injunction is not
supported by any evidence adduced at the injunction hearing; and (3) the injunction fails
to set a bond. Appellants cite Texas Rules of Civil Procedure 682 and 684 in support of
these arguments. Texas Rule of Civil Procedure 682 provides that:

 No writ of injunction shall be granted unless the applicant therefor shall
present his petition to the judge verified by his affidavit and containing a plain
and intelligible statement of the grounds for such relief.


Tex. R. Civ. P. 682. Texas Rule of Civil Procedure 684 requires the court to "fix the amount
of security to be given by the applicant" in the order granting a temporary injunction. See
id. 684. 

 The order involved in this appeal is not the judgment in this lawsuit, nor is it a
temporary injunction obtained as a precursor to a permanent injunction. Rather, it is a
post-judgment order designed to enforce the final judgment previously entered by the trial
court. As judgment creditors, appellees were entitled through injunction or other means
to obtain satisfaction on the judgment. See Tex. Civ. Prac. & Rem. Code Ann. §31.002
(Vernon 2008). The typical requirements for an injunction are not applicable to an
injunction granted to enforce a final judgment. Roosth v. Roosth, 889 S.W.2d 445, 460
(Tex. App.-Houston [14th Dist.] 1994, writ denied). Thus, Rules 632 and 684 of the Texas
Rules of Civil Procedure do not control our analysis of the trial court's order. Accordingly,
we overrule appellants' first and third sub-issues.

 In their second sub-issue, appellants argue that the injunction was not supported
by any evidence adduced at the injunction hearing. However, the trial court had before it
substantial evidence presented previously in connection with numerous hearings and trial
on the merits of this cause. Moreover, the trial court had heard evidence and arguments
on the specific issues which culminated in the order subject to appeal. On May 21, 2008,
for instance, Miguel Angel Abramo Martinez, an attorney licensed to practice in Mexico,
who represented Marcelo, Raquel, and Carlos in some of the proceedings, testified that
after he had released an injunction holding the 34 million pesos in the registry of the
Mexican court, and the money was released and acquired by representatives of appellants,
appellants failed to cooperate and fund a Mexican trust with the 34 million pesos as
required by the settlement agreement. There was no contrary evidence presented by
appellants. Moreover, on June 9, appellant's counsel informed the court that he had no
"personal knowledge" regarding the location of the missing funds. Based on the foregoing,
the trial court's decision was not unreasonable or arbitrary and did not constitute an abuse
of discretion. See Sivley v. Sivley, 972 S.W.2d 850, 862 (Tex. App.-Tyler 1998, no writ). 
 The trial court's order of June 11 is affirmed.

IV. Contempt and Attachment Orders of June 27


 In their second issue, appellants argue that the trial court's "Order for Writ of
Attachment" issued on June 27 should be reversed and the writs of attachment ordered
withdrawn because: (1) the motion for contempt was not verified; (2) the trial court lacked
the authority to enforce a temporary injunction that was on appeal; and (3) the underlying
temporary injunction must be reversed and the injunction dissolved because it fails to
comply with Texas law. The June 27 order is entitled "Order for Issuance of Writ of
Attachment," and provides, in part:

 The Court finds that -


 1. Respondents . . . were duly noticed to appear before this Court on
June 27, 2008 to show why they should not be found in contempt of
Court.


 2. Respondents . . . have failed to appear before this Court on June 27,
2008 to show why they should not be found in contempt of Court.


 3. It is therefore ORDERED that a writ of attachment be issued against
Respondents . . .


 4. It is further ORDERED that [respondents] may purge himself or
herself by posting a bond in the amount of $1,000,000.00 each,
payable to Petitioner, subject to approval by this Court, conditioned
on his/her continuing obedience of the orders entered by this Court on
February 14, 2008, June 11, 2008, and June 24, 2008.


The court's order for issuance of writs of attachment was an order for confinement based
on the court's finding that appellants failed to appear before the trial court on June 27, as
ordered by the court, and failed to comply with the court's orders. 

 Appellants first contend that the trial court's order should be reversed because the
underlying motion for contempt was not verified. However, where the order relates to 
punishment for contempt of a particular show cause order, a contempt judgment is valid,
notwithstanding the non-verification of the complaint. See Ex parte Winfree, 153 Tex. 12,
263 S.W.3d 154, 158 (Tex. 1953). 

 The validity of an order of confinement is generally subject to review only by way of
a writ of habeas corpus. See, e.g., Ex parte Williams, 690 S.W.2d 243, 244 (Tex. 1985);
Grimes v. Grimes, 706 S.W.2d 340, 343 (Tex. App.-San Antonio 1986, writ dism'd) (citing
Wagner v. Warnasch, 156 Tex. 334, 295 S.W.2d 890, 893 (1956)). Stated otherwise,
decisions in contempt proceedings which involve confinement are not subject to appeal. 
See Williams, 690 S.W.2d at 243 n.1; Ex parte Cardwell, 416 S.W.2d 382, 384 (Tex.
1967); Pandozy v. Beaty, 254 S.W.3d 613, 616 (Tex. App.-Texarkana 2008, no pet.);
Metzger v. Sebek, 892 S.W.2d 20, 54 (Tex. App.-Houston [1st Dist.] 1994, writ denied);
Saenz v. Saenz, 756 S.W.2d 93, 95 (Tex. App.-San Antonio 1988, no writ). (6) This is true
even when the contempt order is being appealed along with a judgment that is appealable.
See Metzger, 892 S.W.2d at 54. Accordingly, we hold that the "Order for Writ of
Attachment," and the writs of attachment themselves, are not appealable orders. Thus,
we do not have jurisdiction over appellants' second issue. (7) Therefore, we dismiss the
appeal as it relates to the June 27 order and the writs of attachment. 




V. Conclusion


 The Court, having fully examined and considered the matters herein, affirms in part
and dismisses in part. We AFFIRM the trial court's order of June 11, 2008. We DISMISS

FOR WANT OF JURISDICTION the appeal of the trial court's order of June 27, 2008, and
the writs of attachment. The motion for temporary relief and sanctions, previously filed by
appellees, is DENIED. Appellees' motion to consolidate and dismiss, as it pertains to this
cause, is likewise DENIED, as is their motion for oral argument. 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and

filed this 2nd day of April, 2009.


1. Doña Raquel's seven children are as follows: Consuelo Villarreal Cantú, Raquel Villarreal Cantú,
Marcelo Villarreal Cantú, Carlos Villarreal Cantú, Ignacio Villarreal Cantú, Fernando Villarreal Cantú, and
Martha Guadalupe Villarreal Cantú. Marcelo Villarreal Cantú and Carlos Villarreal Cantú are not parties to
this appeal. 
2. See, e.g., In re Cantu, No. 13-08-00437-CV, 2008 Tex. App. LEXIS 5795, at *1-2 (Tex. App.-Corpus
Christi July 30, 2008, orig. proceeding [mand. denied]) (denying petition for writ of mandamus filed by Ignacio,
Fernando, Consuelo, and Martha seeking to compel the trial court to vacate various orders pertaining to the
guardianship of Doña Raquel); In re Cantu, 13-08-00682-CV, 2009 Tex. App. LEXIS ___, at __ (Tex.
App.-Corpus Christi Apr. 2, 2009, orig. proceeding) (denying petition for writ of mandamus filed by Consuelo
contending that the trial court failed to satisfy "the mandatory and jurisdictional notice requirements of the
Texas Probate Code" because it held an initial guardianship hearing and appointed a temporary guardian
"without giving the proposed ward prior notice as required by section 875 of the Texas Probate Code"); In re
Cantu, 13-08-00707-CV, 2009 Tex. App. LEXIS __, at __ (Tex. App.-Corpus Christi Apr. 2, 2009, no pet. h.)
(dismissing Ignacio's appeal of an order removing him as guardian of the person of Doña Raquel). Also
currently pending in this Court is In re Cantu, 13-08-00708-CV, an appeal of arbitration proceedings in the
underlying dispute. 

3. "Hotchpotch," or "hotchpot," or "hodgepodge" is may be generally defined in this context as "the
blending of properties to secure equality of division." See Bryan A. Garner, a Dictionary of Modern Legal
Usage 408 (2d ed. 1995). 
4. We note that the amount at issue varies from 34 million pesos to 35 million pesos. We assume that
the difference is caused by accruing interest; however, we need not address this issue herein because the
discrepancy is not relevant for the purposes of our analysis. 
5. A turnover order is a "procedural device by which judgment creditors may reach assets of a debtor
that are otherwise difficult to attach or levy on by ordinary legal process." Beaumont Bank N.A. v. Buller, 806
S.W.2d 223, 224 (Tex. 1991); see Tex. Civ. Prac. & Rem. Code Ann. § 31.002(a) (Vernon 2008). To
accomplish turnover, the court may: (1) order the judgment debtor to turn over nonexempt property that is
in the debtor's possession or is subject to the debtor's control to a designated sheriff or constable for
execution; (2) otherwise apply the property to the satisfaction of the judgment; or (3) appoint a receiver with
the authority to take possession of the nonexempt property, sell it, and pay the proceeds. See Tex. Civ. Prac.
& Rem. Code Ann. § 31.002(b). A turnover order may be enforced by contempt proceedings. See id. §
31.002(c). A turnover order essentially places the burden of production of property which is subject to
execution to be placed with the debtor instead of a creditor attempting to satisfy the his judgment. See Buller,
806 S.W.2d at 226. 
6. If there is no order of confinement, then the proper remedy is by writ of mandamus. See, e.g., In
re Long, 984 S.W.2d 623, 625 (Tex. 1999); Dunn v. Street, 938 S.W.2d 33, 35 (Tex. 1997); Pandozy v. Beaty,
254 S.W.3d 613, 616 (Tex. App.-Texarkana 2008, no pet.). 
7. Accordingly, we need not reach the issue regarding whether, given the absence of a motion to quash
in the appellate record, appellants preserved error to complain about the writ of attachment. See, e.g. Wallace
v. First Nat'l Bank of Gallatin, 95 Tex. 103, 105, 65 S.W. 180, 180 (1901) (concluding that any defects in the
attachment process must be presented to the trial court in a motion to quash); Calvert v. Bennett, 286 S.W.
303, 304 (Tex. Civ. App.-Amarillo 1926, writ dism'd w.o.j.) ("Objections to the sufficiency of the attachment
bond come too late, when urged in this court for the first time.").