

**NUMBER 13-08-00408-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**IN THE GUARDIANSHIP OF RAQUEL CANTU DE VILLARREAL,
AN INCAPACITATED PERSON**

---

**On appeal from the County Court at Law No. 2
of Cameron County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Benavides
Memorandum Opinion by Justice Rodriguez**

This appeal arises from the guardianship proceeding of Raquel Cantú de Villarreal ("Doña Raquel"). Doña Raquel, an elderly widow, is the mother of seven adult children, including appellants, Ignacio Villarreal Cantú, Consuelo Villarreal Cantú, Fernando Villarreal Cantú, and Martha Guadalupe Villarreal Cantú, and appellee, Raquel Villarreal Cantú, appearing herein individually and in her capacity as permanent guardian of the

person of Doña Raquel.[1] Disputes between the children regarding Doña Raquel's care and custody and the disposition of her sizeable estate have given rise to a series of highly contentious legal proceedings, including three appeals and two original proceedings.[2] We will not address the factual and procedural underpinnings of these disputes herein except as necessary to address the legal issues pertinent to this appeal. *See* TEX. R. APP. P. 47.1, 47.4.

In this proceeding, Ignacio, Fernando, Consuelo, and Martha appeal two post-judgment orders of the trial court. We affirm, in part, and dismiss, in part, as further stated herein.

## I. Background

On February 12, 2008, Doña Raquel's children entered into an "Irrevocable Family Settlement Agreement, Assignment, and Release and Rule 11 Agreement," which purported to settle all claims and controversies between the children regarding their mother's care and support and the ownership, transfer, and control of her property.

---

[1] Doña Raquel's seven children are as follows: Consuelo Villarreal Cantú, Raquel Villarreal Cantú, Marcelo Villarreal Cantú, Carlos Villarreal Cantú, Ignacio Villarreal Cantú, Fernando Villarreal Cantú, and Martha Guadalupe Villarreal Cantú. Marcelo Villarreal Cantú and Carlos Villarreal Cantú are not parties to this appeal.

[2] *See, e.g., In re Cantu*, No. 13-08-00437-CV, 2008 Tex. App. LEXIS 5795, at *1-2 (Tex. App.–Corpus Christi July 30, 2008, orig. proceeding [mand. denied]) (denying petition for writ of mandamus filed by Ignacio, Fernando, Consuelo, and Martha seeking to compel the trial court to vacate various orders pertaining to the guardianship of Doña Raquel); *In re Cantu*, 13-08-00682-CV, 2009 Tex. App. LEXIS ___, at __ (Tex. App.–Corpus Christi Apr. 2, 2009, orig. proceeding) (denying petition for writ of mandamus filed by Consuelo contending that the trial court failed to satisfy "the mandatory and jurisdictional notice requirements of the Texas Probate Code" because it held an initial guardianship hearing and appointed a temporary guardian "without giving the proposed ward prior notice as required by section 875 of the Texas Probate Code"); *In re Cantu*, 13-08-00707-CV, 2009 Tex. App. LEXIS __, at __ (Tex. App.–Corpus Christi Apr. 2, 2009, no pet. h.) (dismissing Ignacio's appeal of an order removing him as guardian of the person of Doña Raquel). Also currently pending in this Court is *In re Cantu*, 13-08-00708-CV, an appeal of arbitration proceedings in the underlying dispute.

Pursuant to the settlement agreement, the children agreed, inter alia, to create a trust and fund it with the portions of their mother's estate that they controlled. The agreement provides, in part:

> All parties agree that the estate of Raquel Cantú de Villarreal consists of the 34 million pesos in the form of a check in a court in Mexico and whatever money that is in the temporary guardian of the estate's accounts in the United States. By copy of this Agreement all parties shall instruct their attorneys to take all necessary steps to have these funds released and delivered to [the] below mentioned Mexican Trust that shall be created. The money in the accounts in the United States of the temporary guardian of the estate, Jaime Diaz, shall also be placed in such Mexican Trust. This mentioned Mexico property shall be administered by a Mexican Trust to be drafted by Carlos Lugo and Miguel Angel Abramo Martinez.
>
> The following properties belong to the seven children of Raquel Cantú de Villarreal and shall be placed into hotchpotch and distributed among and between the seven children of Raquel Cantú de Villarreal[:] a) all shares of San Pedro Impulsora De Immuebles Especiales S.A. de C.V., and any and all assets of such company[;] b) real estate properties in Exhibits "1" and "2" . . . and c) the below mentioned properties that are stated to be part of Hotchpotch.[3]

The trial court approved the settlement and incorporated it into the final judgment in the case by a first amended order signed on February 14, 2008.

Alleging that Ignacio, Consuelo, and Martha breached the agreement and failed to abide by the judgment, Raquel moved for an accounting and for contempt and asked for a temporary restraining order and temporary and permanent injunctions. The gravamen of Raquel's complaint was that appellants withdrew the 34 million pesos referenced in the settlement agreement from the possession of the Mexican court, but failed to deposit the monies into the Mexican trust as required by the agreement and judgment.

---

[3] "Hotchpotch," or "hotchpot," or "hodgepodge" is may be generally defined in this context as "the blending of properties to secure equality of division." *See* Bryan A. Garner, A DICTIONARY OF MODERN LEGAL USAGE 408 (2d  ed. 1995).

3

On June 11, the trial court entered an order granting Raquel's motion.  The order reads, in part:

> IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ, CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ are Ordered within 10 days from the entry of this Order, to deposit the $35,000,000.00 pesos[4] listed in Paragraph 14 of the "Irrevocable Family Settlement Agreement, Assignment, and Release and Rule 11 Agreement" (attached hereto and fully incorporated into this Order) into an account created for the benefit of the trust referenced in said paragraph 14 of the "Family Settlement Agreement, Assignment, and Release and Rule 11 Agreement."
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ, CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ are Ordered, within 10 days from the entry of this Order, to provide a detailed accounting to this Court as to the whereabouts of said $35,000,000.00 pesos listed in paragraph 14 of the "Irrevocable Family Settlement Agreement, Assignment, and Release and Rule 11 Agreement."  Said accounting is to include the financial institution where said funds are on deposit, the name of the person under whose name the funds are on deposit, the signatories on said account, the type of account, and the account number.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ, CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ, in a manner consistent with the above terms of this Order, deposit said funds into an account which will be under the joint control of Ignacio Villarreal and Marcelo Villarreal[.]
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ, CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ are enjoined from selling, encumbering or otherwise transferring any of the real estate properties described in Exhibits 1 and 2 of the "Irrevocable Family Settlement Agreement, Assignment, and Release and Rule 11 Agreement"

---

[4] We note that the amount at issue varies from 34 million pesos to 35 million pesos.  We assume that the difference is caused by accruing interest; however, we need not address this issue herein because the discrepancy is not relevant for the purposes of our analysis.

4

in any manner inconsistent with the disposition of said properties as provided in said Family Settlement Agreement.

IT IS THEREFORE ORDERED that a final hearing on PETITIONER RAQUEL VILLARREAL'S SECOND AMENDED MOTION FOR ACCOUNTING OF THE $34 MILLION PESOS WITHDRAWN BY RESPONDENTS AND THE REAL ESTATE PROPERTY WHICH IS THE SUBJECT OF THIS LAWSUIT, AND TEMPORARY INJUNCTION be set on June 27, 2008, at 1:30 p.m. . . . At such time, IGNACIO VILLARREAL CANTÚ, FERNANDO VILLARREAL CANTÚ, CONSUELO VILLARREAL CANTÚ and/or MARTHA VILLARREAL CANTÚ are ORDERED to appear before this Court to show their compliance with this Court's Order herein to show why this Court's Order should be vacated.

On June 27, Ignacio, Fernando, Consuelo and Martha failed to appear, and accordingly, the trial court entered an order for issuance of writs of attachment against them.

This appeal ensued. In their first issue, appellants contend that the order entered by the trial court on June 11, 2008, is a void temporary injunction because: (1) it is not based on a verified application; (2) it is not supported by any evidence admitted at the injunction hearing; and (3) it fails to set a bond. In their second issue, appellants argue that the June 27 order for issuance of writs of attachment should be reversed, and the writs ordered withdrawn, because: (1) the motion for contempt was not verified; (2) the trial court lacked the authority to enforce a temporary injunction that was on appeal; and (3) the underlying temporary injunction must be reversed and the injunction dissolved because it fails to comply with Texas Law.

## II. Jurisdiction

Generally, appeals may be taken only from final judgments. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Accordingly, a party may not appeal an interlocutory order unless authorized by statute. *Bally Total Fitness Corp. v. Jackson*, 53 S.W.3d 352, 352 (Tex. 2001); *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 272 (Tex.

5

1992) (orig. proceeding); *see Ogletree v. Matthews*, 262 S.W.3d 316, 319 (Tex. 2007). If we lack jurisdiction, we must dismiss the attempted appeal. *See Kilroy v. Kilroy*, 137 S.W.3d 780, 783 (Tex. App.–Houston [1st Dist.] 2004, no pet.).

Given that the orders under review in this appeal are post-judgment orders of the trial court, rather than a final judgment, we will examine our jurisdiction over each of these orders individually.

### III. Post-Judgment Order of June 11

A court has the inherent power to enforce its judgments, even after the expiration of its plenary power, and the court may employ suitable methods in doing so. *See* TEX. R. CIV. P. 308; *Arndt v. Farris*, 633 S.W.2d 497, 499 (Tex. 1982); *Ex parte Gorena*, 595 S.W.2d 841, 844 (Tex. 1979); *see also In re Crow-Billingsley Air Park, Ltd.*, 98 S.W.3d 178, 179 (Tex. 2003) (holding that the "trial court has an affirmative duty to enforce its judgment" under Rule 308). Generally, an order made for the purpose of carrying into effect an already-entered judgment is not a final judgment or decree and cannot be appealed as such. *See Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (Tex. 1956); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 51.012 (Vernon 2008) (providing that final judgments of trial courts are appealable); TEX. R. CIV. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."). The "usual writs and orders to aid in execution to collect a final money judgment are not, in general, appealable orders." *Schultz v. 5th Jud. Dist. Court of Appeals of Dallas*, 810 S.W.2d 738, 740 (Tex. 1991). If the order is not an appealable one, jurisdiction does not attach in the court of appeals. *Id*. at n.6. On the other hand, some post-judgment orders are appealable. *Id.* at 740 (finding that a turnover order, which resolved property rights and

6

acted "in the nature of a mandatory injunction," was appealable). As a general rule, for instance, turnover orders[5] are final, appealable orders. *See Burns v. Miller, Hiersche, Martens & Hayward, P.C.*, 909 S.W.2d 505, 506 (Tex. 1995); *Pandozy v. Beaty*, 254 S.W.3d 613, 617 (Tex. App.–Texarkana 2008, no pet.); *In re Hamel*, 180 S.W.3d 226, 229 (Tex. App.–San Antonio 2005, orig. proceeding).

We look to the substance of the order to determine whether it is appealable. *See, e.g., Wagner*, 295 S.W.2d at 892 (looking to the nature of the post-judgment relief granted in the order as opposed to the relief actually requested in the motion); *cf. Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 601 (Tex. 1999) (construing the substance of a motion, rather than its title, to determine the availability of interlocutory appeal); *accord Burke v. Union Pac. Res. Co.*, 138 S.W.3d 46, 60 (Tex. App.–Texarkana 2004, pet. denied, pet. dism'd [2 pets.]) ("A motion should be construed by its substance to determine the relief sought, not merely by its form or caption.").

The order at issue is entitled "Order Granting Petitioner Raquel Villarreal's Second Amended Motion for Accounting of the $34 Million Pesos Withdrawn by Respondents and the Real Estate Property Which is the Subject of this Lawsuit, and Temporary Injunction." The substance of the order requires affirmative action by appellants. It orders the 35 million pesos described in the settlement agreement to be placed into an account created

---

[5] A turnover order is a "procedural device by which judgment creditors may reach assets of a debtor that are otherwise difficult to attach or levy on by ordinary legal process." *Beaumont Bank N.A. v. Buller*, 806 S.W.2d 223, 224 (Tex. 1991); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(a) (Vernon 2008). To accomplish turnover, the court may: (1) order the judgment debtor to turn over nonexempt property that is in the debtor's possession or is subject to the debtor's control to a designated sheriff or constable for execution; (2) otherwise apply the property to the satisfaction of the judgment; or (3) appoint a receiver with the authority to take possession of the nonexempt property, sell it, and pay the proceeds. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 31.002(b). A turnover order may be enforced by contempt proceedings. *See id.* § 31.002(c). A turnover order essentially places the burden of production of property which is subject to execution to be placed with the debtor instead of a creditor attempting to satisfy the his judgment. *See Buller*, 806 S.W.2d at 226.

for the benefit of the trust referenced in the settlement agreement. It orders appellants to provide a detailed accounting to the court regarding the location of the money at issue. It enjoins appellants from selling, encumbering, or transferring real estate properties referenced in the trust in any manner inconsistent with the settlement agreement. In short, it orders property to be collected, or turned over, and acts as a mandatory injunction as to the judgment debtors or transferees. We conclude that the order at issue acts "in the nature of a mandatory injunction," which makes it appealable. *See Schultz*, 810 S.W.2d at 740; *Kennedy v. Hudnall*, 249 S.W.3d 520, 524 (Tex. App.–Texarkana 2008, no pet.). Accordingly, we have jurisdiction over the appeal of this order, and will proceed to address the merits of appellants' issues regarding this order.

By their first issue, appellants contend that the June 11 "temporary injunction" is void because: (1) the motion seeking injunctive relief was not verified; (2) the injunction is not supported by any evidence adduced at the injunction hearing; and (3) the injunction fails to set a bond. Appellants cite Texas Rules of Civil Procedure 682 and 684 in support of these arguments. Texas Rule of Civil Procedure 682 provides that:

> No writ of injunction shall be granted unless the applicant therefor shall present his petition to the judge verified by his affidavit and containing a plain and intelligible statement of the grounds for such relief.

TEX. R. CIV. P. 682. Texas Rule of Civil Procedure 684 requires the court to "fix the amount of security to be given by the applicant" in the order granting a temporary injunction. *See id.* 684.

The order involved in this appeal is not the judgment in this lawsuit, nor is it a temporary injunction obtained as a precursor to a permanent injunction. Rather, it is a post-judgment order designed to enforce the final judgment previously entered by the trial

8

court. As judgment creditors, appellees were entitled through injunction or other means to obtain satisfaction on the judgment. *See* TEX. CIV. PRAC. & REM. CODE ANN. §31.002 (Vernon 2008). The typical requirements for an injunction are not applicable to an injunction granted to enforce a final judgment. *Roosth v. Roosth*, 889 S.W.2d 445, 460 (Tex. App.–Houston [14th Dist.] 1994, writ denied). Thus, Rules 632 and 684 of the Texas Rules of Civil Procedure do not control our analysis of the trial court's order. Accordingly, we overrule appellants' first and third sub-issues.

In their second sub-issue, appellants argue that the injunction was not supported by any evidence adduced at the injunction hearing. However, the trial court had before it substantial evidence presented previously in connection with numerous hearings and trial on the merits of this cause. Moreover, the trial court had heard evidence and arguments on the specific issues which culminated in the order subject to appeal. On May 21, 2008, for instance, Miguel Angel Abramo Martinez, an attorney licensed to practice in Mexico, who represented Marcelo, Raquel, and Carlos in some of the proceedings, testified that after he had released an injunction holding the 34 million pesos in the registry of the Mexican court, and the money was released and acquired by representatives of appellants, appellants failed to cooperate and fund a Mexican trust with the 34 million pesos as required by the settlement agreement. There was no contrary evidence presented by appellants. Moreover, on June 9, appellant's counsel informed the court that he had no "personal knowledge" regarding the location of the missing funds. Based on the foregoing, the trial court's decision was not unreasonable or arbitrary and did not constitute an abuse of discretion. *See Sivley v. Sivley*, 972 S.W.2d 850, 862 (Tex. App.–Tyler 1998, no writ).

The trial court's order of June 11 is affirmed.

IV. Contempt and Attachment Orders of June 27

In their second issue, appellants argue that the trial court's "Order for Writ of Attachment" issued on June 27 should be reversed and the writs of attachment ordered withdrawn because: (1) the motion for contempt was not verified; (2) the trial court lacked the authority to enforce a temporary injunction that was on appeal; and (3) the underlying temporary injunction must be reversed and the injunction dissolved because it fails to comply with Texas law. The June 27 order is entitled "Order for Issuance of Writ of Attachment," and provides, in part:

> The Court finds that –
>
> 1. Respondents . . . were duly noticed to appear before this Court on June 27, 2008 to show why they should not be found in contempt of Court.
>
> 2. Respondents . . . have failed to appear before this Court on June 27, 2008 to show why they should not be found in contempt of Court.
>
> 3. It is therefore ORDERED that a writ of attachment be issued against Respondents . . .
>
> 4. It is further ORDERED that [respondents] may purge himself or herself by posting a bond in the amount of $1,000,000.00 each, payable to Petitioner, subject to approval by this Court, conditioned on his/her continuing obedience of the orders entered by this Court on February 14, 2008, June 11, 2008, and June 24, 2008.

The court's order for issuance of writs of attachment was an order for confinement based on the court's finding that appellants failed to appear before the trial court on June 27, as ordered by the court, and failed to comply with the court's orders.

Appellants first contend that the trial court's order should be reversed because the underlying motion for contempt was not verified. However, where the order relates to punishment for contempt of a particular show cause order, a contempt judgment is valid,

notwithstanding the non-verification of the complaint.  *See Ex parte Winfree*, 153 Tex. 12, 263 S.W.3d 154, 158 (Tex. 1953).

The validity of an order of confinement is generally subject to review only by way of a writ of habeas corpus.  *See, e.g., Ex parte Williams*, 690 S.W.2d 243, 244 (Tex. 1985); *Grimes v. Grimes*, 706 S.W.2d 340, 343 (Tex. App.–San Antonio 1986, writ dism'd) (citing *Wagner v. Warnasch*, 156 Tex. 334, 295 S.W.2d 890, 893 (1956)).  Stated otherwise, decisions in contempt proceedings which involve confinement are not subject to appeal. *See Williams*, 690 S.W.2d at 243 n.1; *Ex parte Cardwell*, 416 S.W.2d 382, 384 (Tex. 1967); *Pandozy v. Beaty*, 254 S.W.3d 613, 616 (Tex. App.–Texarkana 2008, no pet.); *Metzger v. Sebek*, 892 S.W.2d 20, 54 (Tex. App.–Houston [1st Dist.] 1994, writ denied); *Saenz v. Saenz*, 756 S.W.2d 93, 95 (Tex. App.–San Antonio 1988, no writ).[6]  This is true even when the contempt order is being appealed along with a judgment that is appealable. *See Metzger*, 892 S.W.2d at 54.  Accordingly, we hold that the "Order for Writ of Attachment," and the writs of attachment themselves, are not appealable orders.  Thus, we do not have jurisdiction over appellants' second issue.[7]  Therefore, we dismiss the appeal as it relates to the June 27 order and the writs of attachment.

---

[6] If there is no order of confinement, then the proper remedy is by writ of mandamus.  *See, e.g., In re Long*, 984 S.W.2d 623, 625 (Tex. 1999); *Dunn v. Street*, 938 S.W.2d 33, 35 (Tex. 1997); *Pandozy v. Beaty*, 254 S.W.3d 613, 616 (Tex. App.–Texarkana 2008, no pet.).

[7] Accordingly, we need not reach the issue regarding whether, given the absence of a motion to quash in the appellate record, appellants preserved error to complain about the writ of attachment.  *See, e.g. Wallace v. First Nat'l Bank of Gallatin*, 95 Tex. 103, 105, 65 S.W. 180, 180 (1901) (concluding that any defects in the attachment process must be presented to the trial court in a motion to quash); *Calvert v. Bennett*, 286 S.W. 303, 304 (Tex. Civ. App.–Amarillo 1926, writ dism'd w.o.j.) ("Objections to the sufficiency of the attachment bond come too late, when urged in this court for the first time.").

## V. Conclusion

The Court, having fully examined and considered the matters herein, affirms in part and dismisses in part. We AFFIRM the trial court's order of June 11, 2008. We DISMISS FOR WANT OF JURISDICTION the appeal of the trial court's order of June 27, 2008, and the writs of attachment. The motion for temporary relief and sanctions, previously filed by appellees, is DENIED. Appellees' motion to consolidate and dismiss, as it pertains to this cause, is likewise DENIED, as is their motion for oral argument.

NELDA V. RODRIGUEZ
Justice

Memorandum Opinion delivered and
filed this 2nd day of April, 2009.

12