In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00247-CV
_____

MERITAGE HOMES OF TEXAS, Appellant

V.

SUSTAINABLE SOUTHERN LIVING LLC, Appellee

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 23-11-17617-CV

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, Meritage Homes of Texas, LLC ("Meritage") challenges the trial court's Order denying its Motion to Compel Arbitration. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (allowing for an interlocutory appeal from an order denying a motion to compel arbitration). For the reasons discussed below, we reverse the trial court's Order denying arbitration and remand the case to the trial court for entry of an Order compelling arbitration.

1

# I. Background

In November 2023, Sustainable Southern Living, LLC ("Southern Living") sued Meritage for the return of earnest money following the cancellation of an agreement to purchase a home. According to the Petition, in March 2023, Meritage and Southern Living entered into a Purchase Agreement ("Agreement") for the purchase of a newly constructed home in Conroe, Texas. As part of the Agreement, Southern Living placed $17,250.00 in escrow. The Agreement included a condition precedent that required Southern Living to obtain lender financing within twenty-one days of signing the Agreement. Based on the signature date, the deadline to obtain financing was April 4, 2023.

In late March 2023, Southern Living was denied lender financing. Southern Living sought to cancel the Agreement, as permitted under the terms. The terms of the Agreement permitted cancellation once Southern Living (1) delivered to Meritage documentation of denied lender financing and (2) provided Meritage with a written cancellation within the twenty-one-day period. In accordance with the Agreement, Southern Living informed Meritage of the denial and provided documentation of the denial pursuant to the Agreement's terms. Southern Living also requested information on how to request a refund of the earnest money. On April 5, 2023, Southern Living received and completed the "Cancellation of Contract" request form. According to Southern Living, Meritage responded that the

earnest money would be refunded within four to six weeks. On May 17, 2023, Meritage informed Southern Living that it would not refund the earnest money, but that the Southern Living could instead use the money towards another transaction with Meritage.

Southern Living sued Meritage and made claims for Deceptive Trade Practices Act ("DTPA") violations, negligent misrepresentation, breach of contract, and common law fraud. Southern Living sought damages in the amount of $17,000.00, which was the earnest money less the non-refundable $250.00 for processing and administering the Agreement, and attorneys' fees.

In December 2023, Meritage filed its Answer and generally denied the allegations, without waiving its right to compel arbitration. That same month, the trial court issued a docket control order that ordered discovery to be completed sixty days before trial and set the case for trial in August 2024.

In June 2024, Meritage filed a Motion to Compel Arbitration. In the Motion, Meritage argued that the dispute is governed by a valid agreement to arbitrate and that Southern Living's claims fall within the scope of the Agreement. Meritage argued that the Agreement provides for arbitration under the Federal Arbitration Act ("FAA") and specifically states that "any dispute, claim, or controversy between [Southern Living] and Meritage shall be determined by binding arbitration."

3

Meritage stated that all Southern Living's causes of action arise from the dispute over the refund of earnest money under the terms of the Agreement.

That same month, Southern Living responded to Meritage's Motion to Compel Arbitration and argued that arbitration is barred by principles of equitable estoppel under the terms of the Agreement. Southern Living argued that the arbitration clause states that "[a]ny determination of the scope and applicability of the agreement to arbitrate, however, shall be made solely by a federal court in the state in which the Home is located." According to Southern Living, Meritage seeks to avoid its contract burden while enforcing its benefit by not seeking an arbitration determination in federal court. Southern Living further argued that it disputes that its claims are within the scope and applicability of the arbitration clause, and it believed that a federal court must make the final determination in accordance with the Agreement.

Next, Southern Living argued that the quoted arbitration language is a forum-selection clause that Meritage has not made an effort to enforce and has not established that the forum is unreasonable, unjust, or invalid. Southern Living further argued that Meritage's decision to compel arbitration months before trial amounts to a waiver of the right to compel arbitration. According to Southern Living, Meritage sought to compel arbitration seven months after the suit was filed, and only two months prior to trial. Southern Living contended that permitting arbitration at

4

this point would force it to duplicate in arbitration the procedural and discovery already undertaken over the past seven months.

One week later, the trial court denied Meritage's Motion to Compel Arbitration. This interlocutory appeal followed.

## II. Standard of Review

"[A] party seeking to compel arbitration must establish the existence of a valid arbitration agreement and show that the disputed claim falls within the scope of that agreement." *Wagner v. Apache Corp.*, 627 S.W.3d 277, 282 (Tex. 2021) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding)). Once a party proves "a valid arbitration agreement exists, '[d]oubts regarding an agreement's scope are resolved in favor of arbitration because there is a presumption favoring agreements to arbitrate under the FAA.'" *Id.* at 282–83 (quoting *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737).

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam); *see also Mobil Oil Fed. Credit Union v. Smith*, No. 09-22-00393-CV, 2024 WL 630000, at *5 (Tex. App.—Beaumont Feb. 15, 2024, no pet.) (mem. op.). In an abuse of discretion review, we should not reverse

because we might have decided the issue differently. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985); *Mobil Oil Fed. Credit Union*, 2024 WL 630000, at *5. We defer to a trial court's factual findings and review the trial court's legal determinations de novo, including questions of contract interpretation. *See Wagner,* 627 S.W.3d at 283; *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 642–43 (Tex. 2009); *see also Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 479 (Tex. 2019) ("We construe contracts under a de novo standard of review.") (citation omitted). Whether a valid arbitration agreement exists and whether the claims in dispute fall within the scope of the arbitration agreement are legal questions subject to de novo review. *See Henry*, 551 S.W.3d at 115; *In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643.

A party seeking to compel arbitration has the initial burden of proving that a valid arbitration agreement exists and that the claims are within the agreement's scope. *See Wagner*, 627 S.W.3d at 282; *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) (orig. proceeding); *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). While there is a strong presumption favoring arbitration, the presumption only arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *J.M. Davidson*, 128 S.W.3d at 227. Ordinary principles of state contract law determine whether a valid agreement to arbitrate exists. *Kellogg Brown & Root, Inc.*, 166 S.W.3d at 738.

After the proponent of arbitration has made the required showings, the burden then shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *See Henry*, 551 S.W.3d at 115; *Venture Cotton Coop. v. Freeman*, 435 S.W.3d 222, 227 (Tex. 2014).

### III. Analysis

### A. Interpretation of Arbitration Agreement: Issues One, Two, and Four

On appeal, Meritage challenges the denial of its Motion to Compel Arbitration and first challenges the trial court's interpretation of the Agreement in issues one, two, and four. In its first issue, Meritage argues that the trial court erred when it disregarded long established presumptions and public policy that favor arbitration. In issue two, it contends the trial court erred when it disregarded the factual allegations in Southern Living's petition that demonstrate that the claims fall within the scope of the arbitration provision. In issue four, it asserts that the arbitration clause invoked federal jurisdiction for disputes over enforcement of the arbitration provision.

A valid arbitration agreement creates a strong presumption in favor of arbitration. *Rachal v. Reitz*, 403 S.W.3d 840, 850 (Tex. 2013) (citation omitted). Both Texas and federal law require the enforcement of valid agreements to arbitrate. *See* 9 U.S.C. § 2; Tex. Civ. Prac. & Rem. Code Ann. § 171.021. Broad arbitration provisions generally are those "that apply to 'any dispute' or 'all disputes' arising

7

from any agreement." *Rebellion Energy II, LLC v. Liberty Res. Power River Operating, LLC*, No. 01-19-00413-CV, 2019 WL 5699742, at *3 (Tex. App.—Houston [1st Dist.] Nov. 5, 2019, no pet.) (mem. op.) (quoting *In re Complaint of Hornbeck Offshore (1984) Corp.*, 981 F.2d 752, 754 (5th Cir. 1993)); *Clayton v. Tomlinson*, No. 09-24-00020-CV, 2025 WL 339166, at *4 (Tex. App.—Beaumont Jan. 30, 2025, no pet.) (mem. op.) (citations omitted).

First, we will consider Meritage's fourth issue in which it argues the trial court erred in finding that the federal court clause deprived it of the ability to determine the arbitrability of the dispute and order arbitration.

The parties agree that the Agreement contains a valid arbitration agreement. That said, the parties dispute whether Southern Living's claim for a refund of the earnest money falls within the provisions of the arbitration clause. The arbitration provision in the Agreement stated "[a]ny determination of the scope and applicability of the agreement to arbitrate, however, shall be made solely by a federal court in the state in which the Home is located." That said, Meritage agrees that a federal court cannot exercise jurisdiction over this dispute because there is no federal question at issue and the amount in controversy is less than $75,000.00, the amount required to meet diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). So, as a matter of law, a federal court would lack jurisdiction over this dispute.

8

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Gulf Ins. Co. v. Burns Motors, Inc.*, 22 S.W.3d 417, 423 (Tex. 2000); *Coker v. Coker*, 650 S.W.2d 391, 393 (1983). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Coker*, 650 S.W.2d at 393. Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996); *W. Reserve Life Ins. Co. v. Meadows*, 261 S.W.2d 554, 557 (1953).

The Agreement includes a broad arbitration provision and a detailed notice regarding what the parties were waiving and how disputes would be resolved. First, the arbitration provision provides:

> Buyer and Meritage hereby agree that any dispute, claim, or controversy between them and/or any of their respective successors in interest shall be determined by binding arbitration, as provided by the Federal Arbitration Act (9 U.S.C. Section 1 et seq.) and in accordance with the terms and conditions of this Agreement, and not by or in a court of law or equity. For purposes of this paragraph, "dispute, claim, or controversy" shall include any and all disputes, claims, or controversies of any type of nature whatsoever involving Buyer (and/or any successor Buyer) and Meritage, including, but not limited to: (a) those arising from or involving the condition of the Home and/or Meritage's construction of the Home; (b) those arising from or related in any way to this Agreement or the Warranty Agreement; and (3[sic])

9

those relating to any claim for personal injury or property damage allegedly sustained by Buyer.

The Agreement has the following additional provisions:

• In addition to, and without waiving any provision of the balance of this Section 12, Buyer, to the fullest extent allowed under applicable law, hereby knowingly, voluntarily, irrevocably and unconditionally waives buyer's right to trial by jury in any action, legal proceeding, claim, or counterclaim (whether based on contract, tort, or otherwise) between Meritage and Buyer and in any matters arising out of or connected in any way with the contract, and in the event that the parties agree not to resolve a dispute via arbitration as set forth in section 13 below, all such matter shall be heard before a judge and not a jury.

• **BY INITIALING THE SPACE PROVIDED BELOW, YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE CONTRACT AND/OR THE WARRANTY AGREEMENT DECIDED BY BINDING NEUTRAL ARBITRATION AS PROVIDED BY THIS AGREEMENT AND THE FEDERAL ARBITRATION ACT.**

• **TO THE GREATEST EXTENT NOT CONTRARY TO STATE LAW, YOU ARE WAIVING AND GIVING UP ANY RIGHTS YOU MAY HAVE TO HAVE ANY CLAIM OR DISPUTE LITIGATED BY A COURT OR BY JURY TRIAL.**

• **BY INITIALING IN THE SPACE BELOW YOU ARE WAIVING AND GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL EXCEPT TO THE LIMITED EXTENT PROVIDED IN THIS AGREEMENT.**

• **IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF APPLICABLE FEDERAL AND STATE LAW. YOUR AGREEMENT TO THIS BINDING NEUTRAL ARBITRATION PROVISION IS VOLUNTARY.**

In this case, it is clear from the plain language of the agreement that the parties intended to submit any and all disputes related to the Agreement to arbitration. *See J.M. Davidson, Inc.*, 128 S.W.3d at 229; *Burns Motors, Inc.*, 22 S.W.3d at 423; *Coker*, 650 S.W.2d at 393. Not only was the arbitration provision broad in nature to cover all disputes arising from or related in any way to the Agreement, but the Agreement clearly intended to avoid litigation in court and arbitrate most disputes with a Buyer. The Agreement emphasized the waiver of a trial by jury, waiver of any rights to litigate a claim or dispute in a court, and strongly emphasized that disputes and claims arising out of the Agreement would be arbitrated. By concluding otherwise, the trial court undermined the parties' intent as expressed in the written agreement as a whole. Thus, we sustain issues one, two, and four.

**B. Defenses to Arbitration: Issues Three and Five**

Next, Meritage addresses Southern Living's defenses to arbitration. In issue three, Meritage argues that the trial court erred in finding that equitable estoppel barred its Motion to Compel Arbitration under the Agreement. According to Meritage, the trial court should give due regard to the federal and Texas policy favoring arbitration, consider the intent of the parties and contract, and to give effect to all provisions of the contract. Meritage contends that Southern Living has the burden to demonstrate that their claim falls outside of the scope of the Agreement and is therefore not subject to the arbitration provision, and it has not done so.

11

Meritage argues that Southern Living attempts to avoid the arbitration provision simply by stating that the claim falls out the scope of the Agreement, and this is not enough to escape the agreement to participate in arbitration. In doing this, Meritage asserts that Southern Living wants to avoid the severability provision in the Agreement, which allows for an unenforceable provision to be stricken, and the remaining provisions to remain in full force and effect.

Southern Living counters that Meritage should not be permitted to pick and choose which parts of the arbitration provision it wishes to abide by to compel arbitration. Southern Living asserts that the severance provision should not be invoked because Meritage has failed to show that the forum selection provision is unenforceable as a matter of law. We disagree.

After review of Southern Living's argument in the trial court and on appeal that equitable estoppel should prevent Meritage from enforcing the arbitration provision, we conclude that Southern Living failed to provide adequate authority to support its argument. The authority cited by Southern Living involved disputes between signatories and nonsignatories. Case law shows that generally:

> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of the signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. Second, application of equitable estoppel is warranted when the signatory to the contract

containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise, the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Meyer v. WMCO-GP-LLC*, 211 S.W.3d 302, 305–06 (Tex. 2006) (quoting *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.), *cert. denied*, 531 U.S. 1013 (2000) (other citations omitted)).

Here, the clause at issue expressly provides that "[a]ny determination of the scope and applicability of the agreement to arbitrate, however, shall be made solely by a federal court in the state in which the Home is located." As we explained above, a federal court would lack either federal question or diversity jurisdiction over this dispute. The severability provision states, "[i]n the event any provision of the [Agreement] is declared illegal, invalid, or unenforceable for any reason, the remaining provisions shall remain in full force and effect." Generally, "[a]n illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement." *In re Poly-America, L.P.*, 262 S.W.3d 337, 360 (Tex. 2008) (other citations omitted). "Whether or not the invalidity of a particular provision affects the rest of the contract depends upon whether the remaining provisions are independent or mutually dependent promises, which courts determine by looking to the language of the contract itself." *Id.* (other

citations omitted). As a determining factor, courts have considered if absent the unenforceable provisions, would the parties have entered into the agreement. *Id.*

We determined above that the federal forum provision is unenforceable. It is clear that it was the parties' intent, as expressed in the severability clause, that provisions that are "unenforceable for any reason[,]" are severable and that the "remaining provisions remain in full force and effect." It is also clear by the terms of the Agreement that it was the intent of the parties to arbitrate any disputes as manifested in the Agreement. *Id.* Having determined that the venue selection clause is unenforceable, the severability provision of the Agreement allows for the remaining provisions to remain in effect.

Therefore, after considering the plain language of the Agreement, the broad arbitration clause, and unenforceability of the forum selection clause, we conclude that the trial court erred in denying Meritage's Motion to Compel Arbitration. We sustain issue three.

Next, in issue five, Meritage contends that the trial court erred in concluding it waived its right to compel arbitration. Meritage asserts that it did not substantially invoke the judicial process so as to waive the Agreement's arbitration provision. According to Meritage, its timely filed answer and general denial was subject to its right to compel arbitration. The only other activity in the case was the exchange of

14

initial disclosures and its response and objections to Southern Living's additional discovery.

"Waiver of an arbitration right must be intentional." *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996). A party to a suit must make a specific and deliberate act inconsistent with its right to arbitrate to substantially invoke the judicial process to its opponent's detriment. *Sedillo v. Campbell*, 5 S.W.3d 824, 827 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding); *Nationwide of Bryan, Inc. v. Dyer*, 969 S.W.2d 518, 522 (Tex. App.—Austin 1998, no pet.). The test for determining waiver asks: (1) whether the party seeking arbitration substantially invoked the judicial process; and (2) whether the opposing party proved it suffered prejudice as a result. *See Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008); *IBS Asset Liquidations v. Servicios Multiples Del Norte SA de CV*, 419 S.W.3d 573, 575 (Tex. App.—San Antonio 2013, pet. denied) (citing *In re Medallion, Ltd.*, 70 S.W.3d 284, 288 (Tex. App.—San Antonio 2002, orig. proceeding)).

Delay alone generally does not establish waiver. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 515 (Tex. 2015); *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (citing *In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding)). Instead, the party arguing waiver "must establish that any delay resulted in prejudice." *Southwind Grp. Inc. v. Landwehr*, 188 S.W.3d 730, 735 (Tex. App.—Eastland 2006, orig. proceeding). To determine

whether a party opposing arbitration has suffered a prejudice, courts generally consider (1) whether the movant obtained access to information not discoverable in arbitration, and (2) whether the party opposing arbitration incurred costs and fees due to movant's delay. *Id*. at 737.

Whether a party has waived arbitration is decided on a case-by-case basis, based upon the totality of the circumstances. *See G.T. Leach Builders, LLC*, 458 S.W.3d at 512 (citing *Perry Homes*, 258 S.W.3d at 589–90). "'Merely taking part in litigation is not enough.'" *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) (quoting *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d at 763). Many factors are considered by a court when determining whether an implied waiver has occurred including whether the party asserting the right to arbitrate was plaintiff or defendant in the lawsuit, how long the party waited before seeking arbitration, the reasons for any delay in seeking to arbitrate, how much discovery and other pretrial activity the party seeking to arbitrate conducted before seeking arbitration, whether the party seeking to arbitrate asserted affirmative claims for relief in court, the amount of time and expense the parties have expended in litigation, and whether the discovery conducted would be available or useful in arbitration. *See RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016) (citing *G.T. Leach*, 458 S.W.3d at 512; *Perry Homes*, 258 S.W.3d at 590–92). Generally, no one factor is dispositive, and

16

waiver may be decided based on only a few of the foregoing factors or even a single fact. *Id.*; *Perry Homes*, 258 S.W.3d at 591.

Here, the Original Petition was filed November 2023. Meritage timely filed its Original Answer and General Denial subject to its right to compel arbitration in December 2023. That same month, the trial court issued a docket control order with a trial date of August 2024. Meritage then filed its Motion to Compel Arbitration in June 2024. According to Meritage, the parties exchanged Initial Disclosures, and Southern Living propounded seven interrogatories, twelve requests for production, and eight requests for admissions. Other than responding to Southern Living's discovery requests, Meritage made no affirmative efforts to invoke the judicial process. Meritage only filed its Answer and General Denial, and Motion to Compel. Meritage did not serve discovery and did not request any depositions. Although Meritage filed its Motion to Compel Arbitration six months after filing its Original Answer and General Denial, Meritage did not file any additional motions or act in a way that would constitute a waiver of the right to arbitration. *See Nw. Constr. Co., Inc. v. Oak Partners, L.P.*, 248 S.W.3d 837, 848 (Tex. App.—Fort Worth 2008, pet. denied) ("To substantially invoke the judicial process, a party must make a specific and deliberate act after suit is filed that is inconsistent with its right to arbitrate, such as engaging in extensive discovery or requesting a jury.") (citing *Nationwide of Bryan, Inc.*, 969 S.W.2d at 522).

Additionally, Southern Living failed to demonstrate that it suffered prejudice by Meritage filing its Motion to Compel Arbitration. Meritage did not serve discovery upon Southern Living and only responded to Southern Living's discovery requests. In their Response to Meritage's Motion to Compel Arbitration, Southern Living did not argue that it incurred costs due to Meritage's actions or delay. *See Southwind Grp. Inc.*, 188 S.W.3d at 737.

Therefore, having determined that Meritage did not substantially invoke the judicial process, and that Southern Living was not prejudiced by any actions or delay of Meritage, we conclude that Meritage did not waive its right to seek arbitration. *See Nw. Constr. Co., Inc.*, 248 S.W.3d at 848; *Southwind Grp. Inc.*, 188 S.W.3d at 737. We sustain issue five.

## IV. Conclusion

After careful consideration of the parties' arguments, we sustain Meritage's issues, and we reverse the trial court's Order and remand the case to the trial court for an Order consistent with this opinion.

REVERSED AND REMANDED.

W. SCOTT GOLEMON
Chief Justice

Submitted on April 28, 2025
Opinion Delivered August 28, 2025
Before Golemon, C.J., Johnson and Wright, JJ.